14757

HARRISON v. GALLIVAN CONST. CO.

(199 S. E., 307)

*Messrs. W. G. Sirrine* and *Price & Poag,* for appellant,

306

*Messrs. J. LaRue Hinson* and *Blythe & Bonham,* for respondent,

October 27, 1938.

The opinion of the Court was delivered by Mr. Chief Justice Stabler.

In this case we concur in so much of the opinion prepared by Mr. Justice Baker as holds that there was sufficient testimony to take the case to the jury on the question of the appellant's actionable negligence. The history of the case is fully set forth in his opinion. We are unable to concur in the conclusion reached by him that the respond-

ent was guilty of contributory negligence as a matter of law.

When the appellant barricaded the sidewalk, it constructed a walkway alongside the street, which the public was impliedly invited to use, and which the public did use. The appellant admits that it placed the boards or timbers against the street curb, at which point the respondent was injured. While it is asserted that these boards were thus placed to enable the appellant's trucks to mount the curbing and use the alleyway, the evidence shows that the appellant could not escape the knowledge that this temporary way, arranged by it for the use of its trucks, was being used by the public to cross from the street to the sidewalk, this being the most direct route from the end of the walkway to the sidewalk curb. Pedestrians had been walking across these boards for weeks prior to the day on which Mrs. Harrison, the respondent, received her injury. The testimony, not only of Mrs. Harrison, but of several other witnesses, tends to show that the board on which she stepped in attempting to reach the sidewalk, was warped. The respondent says that the boards—variously stated by witnesses to be from two to six in number—were placed loosely in the street. That as she placed her foot on the offending board it gave way, and caused her fall, resulting in a fracture of both bones near her ankle. After she had fallen, she noticed that the board was warped, but the warped condition could not be easily seen because it was covered with mud. It had been raining in Greenville for several days prior to the accident, and had rained on the morning of the accident. The respondent said, "it was mighty wet and muddy, the mud had so oozed under these boards, to all appearances looking at them they were secure and you could not see the warped condition, the waste from the street." Other witnesses testified that the board was warped on one end and that the boards were old, rotted, and worn, and that they were muddy, loosely placed, and uneven.

The appellant strongly argues that Mrs. Harrison was guilty of contributory negligence, as a matter of law, in

stepping upon the board which she claims was warped. The testimony does show that she had walked across these planks frequently in going to and from her work, and for this reason it is urged that, being familiar with the situation, she knew or should have known of their defective condition. She testified, however, that she did not know the board was warped, and that she did not discover its warped condition until after she had fallen, and looked to see what had caused her to fall. She said that from all appearances they were secure, and that the defect was hidden by the accumulation of mud.

■ In our opinion, the evidence is susceptible of more than one reasonable inference on the issue of contributory negligence.

■ The questions of actionable negligence, contributory negligence, and proximate cause, were for the jury's determination, under the testimony.

In the case of *Lynch v. Spartanburg,* 139 S. C., 295, 137 S. E., 743, the city contended that the plaintiff was guilty of contributory negligence, as a matter of law, in stepping backward upon a grating of a water drain without first looking, it being broad daylight, and the plaintiff admitting that he might have seen the hole if he had looked. The Court, affirming a judgment for the plaintiff, stated that while he was held to exercise due care in his use of the streets, he had a right to assume that the defendant had discharged its duty in its exercise of ordinary care in the keeping of its streets in a reasonably safe condition. And further held, that "the Court could not say, as a matter of law, that the plaintiff was required to look about him and examine the street before stepping backwards, and that in failing to do so he was guilty of contributory negligence, or that what he did was not what a man of ordinary intelligence and prudence would have done under like circumstances."

The appellant assigns error to certain portions of the charge given by the presiding Judge to the jury.

It complains that this instruction was given: "While it is true that a person using a public street or sidewalk must in so doing exercise ordinary care for his or her own safety, yet I charge you also that such person using such street or sidewalk has the legal right to assume that they are safe for travel and no duty is imposed upon such person to examine such street or sidewalk to see if there is a defect or obstruction therein."

We see no error in this instruction. It is based upon the principle announced in *Lynch v. Spartanburg, supra.* In addition to this, upon the request of the appellant, the Court charged: "While it is true that a pedestrian has the right to assume that the streets and sidewalks of a city are in a safe condition, yet, a pedestrian cannot close his or her eyes and blindly walk into a known danger. If a pedestrian knows of a danger or defect in a street and if the danger is open and obvious, then a traveler would be guilty of contributory negligence if they did not observe ordinary care to avoid a known danger."

It is next contended that the Court fell into error in stating the law with respect to the duty of a contractor, who had been given a permit by a city to erect or repair a building on the streets of a city. The instructions on this phase of the case are in line with the rule announced in *Walsh v. Dawson Engineering Co.,* 159 S. C., 425, 157 S. E., 447.

We deem it hardly necessary to set out verbatim the excerpts from the charge on this point. We have read with great care the entire charge, and have reached the conclusion that the Judge correctly stated the law. We think that this may be made evident by this quotation from his charge, given upon the request of the appellant: "While the law requires a contractor in the erection of a building upon a public street to use due care to keep the streets and sidewalks in safe condition for travelers, yet, a corresponding duty evolves upon the traveler to exercise due care to avoid danger. Where a person has the choice of two ways or methods to do a particular thing, one of which is safe and

the other being attendant with more or less danger which is open and obvious, if such person selects the unsafe way and is injured in so using such unsafe way, such person could not recover damages for injuries sustained while using the unsafe way."

Error is assigned because the Court overruled a motion for a new trial upon the ground that the verdict is excessive. It is contended that the evidence of damages to the respondent does not justify a verdict of $7,500.00, which was found by the jury.

Dr. C. O. Bates, who attended the respondent for two or three months following her accident, gave the only medical testimony in the case. In explaining the nature of the respondent's injury he said: "She had both bones of the leg broken, the fracture extending into the ankle joint, and these bones were broken into a number of small pieces, we call it comminuted fracture, that means a number of small pieces of bone, and this fracture extended into the covering of the ankle joint, into the joint itself; the foot was displaced about an inch and a half backwards and laterally; there was a good deal of swelling and considerable discoloration around the ankle and about this foot up on the leg."

He further stated that while a good result had been obtained from the surgical operation made necessary, the respondent would always have a weak ankle, and that a further operation might become necessary in order to chisel out an excess bone formation at the ankle joint.

While the jury rendered a full verdict, we are not disposed to say from the evidence that the trial Court abused its discretion in overruling the motion for a new trial. The injury to the respondent, who was a woman forty-seven years of age, and who earned her own living, was painful and serious, with every likelihood of its giving future trouble.

Judgment affirmed.

MESSRS. JUSTICES BONHAM and FISHBURNE concur.

MR. JUSTICE BAKER dissents.

MR. JUSTICE CARTER did not participate on account of illness.

MR. JUSTICE BAKER (dissenting): This is an action for personal injuries sustained by the respondent while walking on Broad Street of the City of Greenville. The complaint alleged that the appellant was engaged in the construction of a building for the Greenville News-Piedmont Company and had been given permission to erect a fence on a portion of the street during construction. That respondent was a pedestrian and while walking near the portion of the street which the appellant had been given permission to use during construction, slipped and fell because of the acts of negligence of the company, set forth in the complaint. The appellant answered, denying the allegations of the complaint as to negligence, and setting up the defense of contributory negligence, recklessness and willfulness.

The case was first called for trial October 15, 1937, before Judge Stoll and a jury, resulting in a mistrial. Thereafter, the case was again called for trial November 11, 1937, before the same Judge. At the conclusion of the evidence for the respondent, appellant made a motion for a nonsuit upon several grounds set forth in the record, principally that there was no proof of negligence on the part of the appellant and that the only inference to be drawn from the testimony was that respondent was guilty of contributory negligence. This motion was overruled. The appellant then offered testimony and at the conclusion of all the evidence made a motion for a directed verdict upon the same grounds as urged for a nonsuit, with the additional ground that there was no proof of any reckless or willful conduct on the part of the appellant and that a verdict should be directed in its favor on this phase of the action. The Court overruled the motion for a directed verdict except as to the cause of action for punitive damages, which the Court granted, holding that there was no evidence upon which the issue of punitive damages could be submitted to the jury. The jury returned a verdict in favor of the respondent. Notice of a motion for a new trial

was made at the time the verdict was rendered and this motion was thereafter argued. The grounds of the motion were principally that the Court had erred in failing to grant the motions for a nonsuit and directed verdict, with the additional ground that the verdict of the jury was excessive, and that a new trial *nisi* should be granted. After hearing arguments, the Court refused the motion on all grounds.

Paragraph III of the complaint is as follows:

"That the injuries above complained of were the direct and proximate cause of the careless, negligent, reckless, wilful, and wanton acts of the defendant, its agents or servants, acting within the scope of their duties and authority, in the following particulars, to wit:

"(a) In placing an obstruction along the street in the City of Greenville, in a dangerous and haphazard manner, in violation of the ordinances of the City of Greenville;

"(b) In placing an obstruction across the entire sidewalk, forcing the public to walk in the roadway, in violation of the ordinances of the City of Greenville;

"(c) In failing to keep the said street in a safe condition for the pedestrians to walk upon and across when same was under its supervision by virtue of a permit granted to said defendant to said portion of the street;

"(d) In failing to provide a safe walkway for the public to cross from the roadway to the sidewalk when it had obstructed the entire sidewalk adjoining said place, in violation of the ordinances of the City of Greenville;

"(e) In heedlessly disregarding the rights of this plaintiff and others lawfully using the said street and sidewalk and considering only the interest of the defendant in getting its trucks across the sidewalk;

"(f) In failing to provide a safe place for the public to travel along and across the said street, especially in view of the rainy weather for a long period of time immediately preceding plaintiff's injury and disregarding the slippery, muddy condition of the streets and the rights of the public to use said sidewalk and street, and especially this plaintiff;

"(g) In placing slick boards from the roadway to the sidewalk, well knowing that the public and especially ladies and this plaintiff were forced to walk upon same and would probably be injured as a result of such carelessness and recklessness."

The grounds of appellant's motion for a nonsuit were:

"1st. * * * there is no allegation or proof of any actionable negligence on the part of the defendant.

"2nd. ˷ * * * the only question or proof of any possible negligence is with reference to furnishing a warped board; and there is absolutely no allegation in the complaint in any way responsive to proof of a warped board being the cause of this lady's injury, therefore, * * * the evidence of an alleged warped board is not sufficient under the allegations of the complaint to take the question of negligence to the jury.

"3rd. * * * that the only inference to be drawn from this testimony from the admissions of the plaintiff herself, and from the testimony of all her witnesses, is that the entire situation there was plain, open and obvious, the muddy condition of the street, the muddy condition of the board, the way it laid there in the gutter, and that she was guilty of contributory negligence in stepping on that board and using that particular walkway or that place when the evidence shows that on the other side of the street there was an absolutely safe way that she could have traveled, and not having used it she is guilty of contributory negligence.

"4th. There is no allegation in the complaint of any board slipping, being loose and slipping and, therefore, evidence along that line cannot be considered."

As has hereinbefore been stated, the appellant was engaged in the construction of a building for the Greenville News-Piedmont Company. This building was on Broad Street, east, and a short distance from Main Street, south, City of Greenville. Before entering upon the construction of the building appellant fenced off a portion of Broad Street immediately in front of the lot whereon the building was

to be erected, the fence extending from the corner of the lot with the sidewalk portion of the street, extending across the sidewalk and into the street proper, and a walkway, with a railing, was maintained along the street, but not on each end of the enclosure. As the name of the street suggests, this was a broad street, each side of the vehicular portion being paved, but the center was of dirt, and the sides of the street sloping towards the sidewalks on either side thereof. To the west of the lot of Greenville News-Piedmont Company was a driveway, or alley, used by appellant in hauling material for the construction project from the street onto the premises, and opposite this driveway, and immediately to the west of the fence projecting across the sidewalk and into the street proper, appellant had placed timbers or boards up against the curbing over which the wheels of its trucks mounted the sidewalk from the street. It was in stepping upon one piece of this timber thus placed against the curbing that respondent slipped or tripped, resulting in her injury.

We think it well at this time to dispose of the contended *per se* negligence of the appellant. The ordinances of the City of Greenville prohibit the blocking or obstruction of any sidewalk or street, and it is not disputed that the sidewalk and a portion of the street had been fenced off—completely blocked off by appellant. Granting, without deciding, that such blocking or fencing off of the sidewalk and portion of the street was in violation of these ordinances, and hence negligence *per se,* no reasonable inference can be drawn from the testimony that this negligence was the proximate cause of respondent's injury, or that it contributed thereto as a proximate cause.

"Where, in the sequence of events between the original default and the final mischief, an entirely independent and unrelated cause intervenes, and is of itself sufficient to stand as the cause of the mischief, the second cause is ordinarily regarded as the proximate cause." *Louisiana Mut. Ins. Co. v. Tweed,* 7 Wall., 44, 52, 19 L. Ed., 65, quoted with ap-

proval in *Cannon v. Lockhart Mills,* 101 S. C., 59, 63, 85 S. E., 233, 234.

In *Carter v. Atlantic Coast Line R. Co.,* 109 S. C., 119, 95 S. E., 357, 11 A. L. R., 1411, Mr. Justice Hydrick, in writing the opinion of the Court, stated (page 358) :

"It is elementary that the law considers the proximate and not the remote cause of injury, which means that, when one party seeks to recover damages of another for a wrongful act or omission, he must allege and prove that the act or omission was the direct and efficient cause of his injury. \* \* \*

"The authorities are practically unanimous in holding that, when the negligence alleged appears merely to have brought about a condition of affairs, or a situation under which another and entirely independent and efficient agency intervenes to cause the injury, the latter is to be deemed the direct or proximate cause, and the former only the indirect or remote cause. The doctrine is discussed and illustrated by numerous cases in 1 Thompson on Negligence, § 43 *et seq.* A late case in point is *Chancey v. Norfolk & W. Ry. Co.* [174 N. C., 35], 93 S. E., 834, [L. R. A., 1918-A, 1070, Ann. Cas., 1918-E, 580], in which the Court held that a carrier was not liable for the robbery of a passenger, alleged to have been caused by the insufficient lighting and over-crowding of its cars."

This principle as announced in *Carter v. Atlantic Coast Line R. Co., supra,* has been adhered to by this Court in numerous cases, among which are, *Sandel v. State,* 115 S. C., 168, 104 S. E., 567, 13 A. L. R., 1268; *Miller v. Atlantic Coast Line R. Co.,* 140 S. C., 123, 138 S. E., 675; and *Johnston v. Atlantic Coast Line R. Co.,* 183 S. C., 126, 190 S. E., 459.

It will therefore be seen that respondent must rely upon common law or proven negligence on the part of appellant.

At the time of respondent's injury, the appellant was making a use of the street which interfered with the public use, and it became the duty of appellant to keep the street in a

reasonably safe condition for those entitled to the use thereof. *Walsh v. Dawson Engineering Co.,* 159 S. C., 425, 157 S. E., 447.

The negligence complained of consists in the main of acts of omission, rather than of commission, but of course this is immaterial, since as stated in *Montgomery v. National Convoy & Trucking Company,* 186 S. C., 167, 195 S. E., 247:

"One may be negligent by acts of omission as well as of commission, and liability therefor will attach if the act of omission of a duty owed another, under the circumstances, is the direct, proximate and efficient cause of the injury." (Page 251.)

It was the custom of citizens generally to park their automobiles on the south side of Broad Street, and on the day of the accident to respondent an automobile was parked practically up to the west end of the boards or scantlings placed in the gutter over which trucks passed in hauling material for the building being erected, and therefore those having occasion to travel or walk from any point east of the enclosure in front of the Greenville News-Piedmont Company lot, to any point west of said lot, were impliedly invited to enter from the street proper onto the sidewalk over the boards, placed there primarily for the entrance of trucks.

There is no material dispute as to the dimension of these boards, or timbers placed against the curbing, but there is a contradiction in the testimony as to the length thereof, that is, if there were four short pieces of timber or two about fourteen feet long, and if more than two timbers lay side by side. However, this is immaterial since there is no allegation that two long pieces of timber would have made the en-. trance safer than four shorter pieces placed end to end. There is testimony that these boards were not securely fastened together; that they had been allowed to remain against the curbing for such a length of time that if stepped upon would "give," and that one of the pieces of timber near the west end had become slightly warped, and it was the theory

of respondent's case upon the second trial that her foot came in contact with this warped board or timber causing her to be thrown to the ground and breaking her leg. So, in fact, the negligence of the appellant, relied upon by respondent, was the warped timber.

The appellant takes the position that this was not a specification of negligence in the complaint, and that even though one of the boards was warped, respondent cannot recover on account thereof; that while under the general allegations of the complaint the warped board theory was permissible as evidence of negligence, yet when respondent undertook in her complaint to allege the defects in the boards against the curbing, she was limited to the defects alleged.

We do not think it will or can be contended that any negligence by appellant has been shown, other than possibly negligence in not having provided a more even and secure manner of placing timbers or boards against the curbing for the entrance of trucks from the street proper to the sidewalk, and replacing these timbers if they became worn or warped, when it was known, or should have been known, that pedestrians, due to the manner and custom of parking automobiles on this portion of Broad Street, would be compelled to pass over the point where these boards were placed; and in continuing to use at this place a board or piece of timber that had become warped at one end. There is nothing to the position of appellant that respondent chose a dangerous route when she had a perfectly obviously safe way of travel by using the north side of Broad Street to Main, across Main to the south side of the intersection of Main and Broad, and thence east on Broad to her destination. We do not feel called upon to discuss this position.

Since this is the character of case where the facts make the law, and no partcular principle of law is involved, and giving buyer's weight to the proposition that pleadings under the Code (Section 477), must be liberally construed and the evidence must be construed strongly in favor of respondent; and since respondent's insurmountable difficulty lies

in her own contributory negligence, we will treat this case as though the evidence of negligence of the appellant was sufficient to .make it necessary to submit this question to the jury.

As above suggested, the crux of the case lies in the contributory negligence of respondent.

Regardless of whether the appellant may have been negligent in some respect, if no other reasonable inference can be drawn from the testimony on behalf of respondent but that she was guilty of contributory negligence, and her negligence was a concurring proximate cause of injury, then such contributory negligence, however slight, is a bar to her recovery.

"Contributory negligence to any extent will always defeat a recovery." *Gladden v. Southern Railway Co.*, 142 S. C., 492, 141 S. E., 90, 100.

Ordinarily, of course, if there is a reasonable dispute as to inferences to be drawn from the testimony, the question of contributory negligence presents an issue of fact for the jury. But where reasonable minds may reach only one reasonable conclusion under the evidence, the question of contributory negligence, like many other questions, becomes one of law for the Court.

In *Meyer v. Gulf Refining Co.*, 179 S. C., 324, 184 S. E., 796, Chief Justice Stabler, writing the opinion of the Court, had this to say (page 797) : "It is true that the affirmative defense of assumption of risk is generally a question for the jury, but not always so; for if the evidence for the plaintiff makes out such defense, the trial Judge may properly grant a nonsuit. In *Lyon v. Charleston & W. C. Ry.*, 77 S. C., 328, 58 S. E., 12, 17, the Court quoted with approval the following from *Hutchison v. Noland*, 1 Hill, 222: 'The general rule certainly is that the plaintiff is not to be nonsuited on what constitutes the defendant's defense, but the rule applies only where the decision goes on the defendant's evidence. In such case the jury alone can decide.

But, if the defendant's defense be established by the plaintiff's witness, then the objection does not apply'.''

The *Meyer case,* was, of course, dealing with the question of assumption of risk, but in its application to whether an issue of fact is present, there is no difference in principle between assumption of risk and contributory negligence. Indeed, in *Hice v. Dobson Lumber Company,* 180 S. C., 259, 185 S. E., 742, in quoting with approval from appellant's argument, we find the following language (page 744) : "We realize that there is some distinction between the defenses of assumption of risk and contributory negligence. This distinction is either broadened or narrowed under the particular facts of each given case. In this case, however, we think that the facts almost merge the two defenses."

Respondent is a married woman, the mother of five children, has been living in Greenville for twenty-four years, during which time she has taught school, then engaged in community work, Red Cross work, and in the last four years, government work, and was physically very active. Her office was in the Greenville News Building. For more than two months the situation with reference to the building operation had been as it was on the day of her injury. As a rule respondent parked her car on East Broad Street, and in going to and from her office, almost daily over this period of time, travelled over the boards resting against the curbing, the place where she fell and was injured. When cars were not parked up against the curbing respondent did not enter upon the sidewalk from the street over the boards. She was fully aware of the conditions surrounding this portion of the street, and had noticed that on occasions the trucks in going over the boards knocked them out, and she had stepped across or on them. For several days prior to the date of respondent's injury, it had been raining, although not at the time of the injury. The sun was then shining. The street was muddy and slick and mud was up against, and on the boards, carried there by the trucks in hauling, all of which could easily be observed.

We think it well at this point to quote from the testimony in the record:

"Q. The muddy condition of that street was fully known to you? A. Yes, sir, it was muddy.

"Q. And if there was mud up against those boards you could see where those trucks had been going up there and dropped mud on the whole thing? A. I saw it after I broke my leg.

"Q. You mean to say when you walked off this walkway you didn't see it? A. I was thinking of going to my office.

"Q. If you had looked at that street was there anything in the world to prevent you from seeing it? A. I admit it was muddy.

"Q. Well, did you see it? A. Yes, sir, I had seen mud there.

"Q. And you saw the mud all up against those boards, didn't you? A. After I had fallen.

"Q. Well, you could have very easily have seen it before, couldn't you? A. If one was looking at that.

"Q. In a muddy street isn't it your duty to be looking, Mrs. Harrison? A. I took the usual precautions.

"Q. Well, ma'am, you said if you had been looking, you would have seen the muddy condition of those boards; you must not have been looking, is that correct? A. You asked me about the mud underneath; I did not see the mud underneath.

"Q. Did you see it all over them? A. Yes, sir.

"Q. You observed all that, and yet now, Mrs. Harrison, an athletic lady, I will ask you the first thing up against the board was a 4 x 4? A. I won't say as to the size.

"Q. And the other a 2 x 8, making about a twelve inch step and the curb is just five inches high? A. Four to five inches.

"Q. Now, I will ask you if an athletic lady who is used to being out in the school yard playing with the children would it not have been easy for you to step fourteen inches up on that curb and never put your foot on those muddy

planks; you could have done that easily? A. I just took my regular stride and my regular stride put me on that board."

From the above, and the entire record, it will be seen that with full knowledge of conditions surrounding the place where respondent was injured, and in the broad open daylight when any defects could have been easily observed if respondent had taken the trouble and care to look, she "just took my (her) regular stride and my (her) regular stride put me (her) on that board."

Respondent cannot fail to take even slight care for her own safety, and then when injured be compensated because the condition of the street was not all it should have been, or in its usual condition.

There was nothing to distract the attention of respondent at the time she reached the boards against the curb of the street. She was not looking up at the building being erected so as to protect herself from being hit by some falling object, as was the plaintiff in the *Walsh-Dawson case, supra.* She was not on the lookout to keep from being run into by any truck about to enter on this driveway. She was not on the lookout for cars traveling in the street, because the only direction from which a car could have come was blocked by parked cars. She simply failed to take any precaution in crossing over these boards, and took them in her "stride".

Because of the danger apparent at the place where the injury occurred, there was imposed upon persons using the street the duty of reasonable care and caution, and ordinary use and exercise of their sense of sight for their own protection, and if they fail to exercise such ordinary care—at least some care—and such failure results in injury, they are left without a remedy.

Applying the same principle of law as was applied in the case of *Adcox v. Campbell Limestone Co.,* 182 S. C., 106, 188 S. E., 657, we must conclude that it was error for the trial Judge not to grant appellant's motion for a nonsuit.

Judgment should be reversed.