JENKINS, *alias* SON JOHN, *v.* THE STATE.

No. 13262.  JULY 9, 1940.

*Russell G. Turner,* for plaintiff in error.
*Ellis G. Arnall,* attorney-general, *John A. Boykin,* solicitor-

*general, J. W. LeCraw, E. E. Andrews, Duke Davis* and *C. E. Gregory Jr., assistant attorneys-general,* contra.

REID, Chief Justice. Late in the afternoon of January 7, 1938, T. W. Adcock was shot in the back with a shotgun. He died several hours later at Grady Hospital in the City of Atlanta, where he had been carried for medical attention. The scene of the shooting was in a small grocery store operated by the deceased on Laurel Avenue a short distance from the intersection of that street and West View Drive. The State accused four negroes, Jimmie Lee Gibbs, Oscar Morgan, J. P. Grant, and Willie Jenkins, of murdering Adcock. Jenkins was placed on trial, and was convicted without recommendation. He assigned error on the judgment overruling his motion for new trial.

■ The evidence for the State made out a clear case of murder against the defendant. In view of the confessions of the defendant and Jimmie Lee Gibbs and the corroborating facts disclosed by the evidence, the jury was amply authorized, if not in good conscience bound, to find that the defendant and three other negroes, including Gibbs and Morgan, entered into a conspiracy to rob the deceased; that pursuant to the plan Gibbs and Morgan left the automobile being driven by the defendant, and entered the store of the deceased, and while Morgan was in the act of going into the cash register Gibbs shot the deceased in the back with a shotgun; and that in the meantime the defendant waited in the automobile a short distance away at the intersection of Laurel Avenue and West View Drive. In *Gore* v. *State,* 162 *Ga.* 267 (134 S. E. 36), the following pertinent ruling was made: "Where three persons conspire to rob a merchant in his store, and one of the conspirators remains in an automobile in front of the store, with the engine running, in order that the three may speedily escape from the scene of the robbery, while the other two enter the store, and, in furtherance of the common design to rob, kill the merchant intended to be robbed, such killing is the probable consequence of the unlawful design to rob, and all the conspirators are guilty of murder, including the one in the automobile. It is not necessary that the crime of murder should be a part of the original design; but it is enough if it be one of the incidental probable consequences of the execution of their design, and should appear at the moment to one of the participants to be expedient for the common purpose.

The intent of the actual slayer is imputable in his coconspirators." See also *Thompson* v. *State,* 166 *Ga.* 758 (144 S. E. 301) ; *Simpson* v. *State,* 168 *Ga.* 598 (148 S. E. 511) ; *Lumpkin* v. *State,* 176 *Ga.* 446 (168 S. E. 241) ; *Wright* v. *State,* 186 *Ga.* 863 (199 S. E. 209) ; *Adkins* v. *State,* 187 *Ga.* 519 (1 S. E. 2d, 420). The general grounds of the motion for new trial are without merit.

▮ Error is assigned on the admission in evidence of testimony of Ellis Barrett Jr., a witness for the State, in which he related certain statements made by the deceased while being carried to the hospital by the witness, as follows: "He kept talking about his wife and kids. He said that the negroes held him up and made him turn around with his back to them and face to the wall, and shot him with a single-barrel shotgun. He said that he was about the center of the store, I think, or in the back; I have forgotten which. He said something about some money. If I remember correctly, he said they [he?]did not have but $2.50, and that they wanted more and he did not have it, and they shot him—that he asked them please not to shoot him. He said they made him turn around with his face to the wall and his back towards them." The objection was as follows: "I object to the testimony wherein he refers to certain statements that certain negroes entered the store and held him up, on the ground that it is not properly connected, and there is nothing to connect this defendant with it as one of the parties. I object to it on the ground that it is inadmissible." It appears from what has already been said that the evidence for the State, as finally presented, clearly established the defendant's connection with the transaction referred to. It may be that when this testimony was offered the defendant's connection with the robbery had not been shown; but since the State thereafter offered evidence sufficient for this purpose, no error appears. The order of proof rests in the discretion of the trial judge. See *Mitchell* v. *State,* 71 *Ga.* 128 (3) ; *Coleman* v. *State,* 141 *Ga.* 731, 733 (82 S. E. 228).

▮ The State offered testimony of Mrs. Adcock, that a short while after her husband was shot and while he was in the hospital he stated that "This is a terrible thing," and also that she heard him tell their daughter to "be a good girl . . . and take care of your mother—good bye." The State also offered testimony of the daughter, that her father while at the hospital told her to "be a

good girl and help your mother, and I will see you in heaven." The defendant objected to this evidence, on the ground that "the State failed to prove that deceased was in a state of articulo mortis." The condition of the deceased was fully described by the doctor who first examined him when he was brought to the emergency clinic at the hospital. He testified: "At the time I saw Mr. Adcock he was in a critical condition, suffering from a gunshot wound in the back, approximately just to the left of the left shoulder-blade in the back, almost directly opposite the heart. That was a very large wound, the size of a small orange. After it got through the outside skin, the wound itself would admit about three fingers. I found innumerable buckshot in Mr. Adcock's back. I did not determine the depth of the wound. I saw that he was in a critical condition, and sent him immediately to the hospital where he would get better attention. . . There were powder burns on the skin around the wound itself. There had been considerable loss of blood. His pulse was very weak, and his clothes were covered with blood. The blood was pretty generally spread. The cause of Mr. Adcock's death was the direct result of the injury from the loss of blood and injury to the lung and injury in the chest. He died at 1:50 a. m. the following morning. As to whether or not he was in the article of death from the time he was shot—the best I can say is that he was in a very critical condition from the very beginning; and as to whether or not he had a chance to recover from the time he was shot—we always hold out some slight chance, possibly not more than one chance out of a thousand."

"Hearsay evidence is that which does not derive its value solely from the credit of the witness, but rests mainly on the veracity and competency of other persons. The very nature of the evidence shows its weakness, and it is admitted only in specified cases from necessity." Code, § 38-301. One of the "specified cases" here referred to is that embodied in § 38-307: "Declarations by any person in the article of death, who is conscious of his condition, as to the cause of his death and the person who killed him, shall be admissible in evidence in a prosecution for the homicide." The obvious relevancy of the testimony objected to was to show that the deceased believed that he was in the article of death. The testimony of the doctor was sufficient to show that the deceased was

in a dying condition from the moment he was shot. It would in truth be difficult to perceive of clearer proof in this connection. Counsel for defendant does not in fact argue in his brief that the evidence did not show that the deceased was in the article of death, but merely contends that the statements of the deceased did not relate "to the cause of his death and the person who killed him." The objection is of course not broad enough to comprehend this point, but it is likewise without merit. Declarations of a person since deceased are admissible to show that he was conscious of his dying condition. See *Gibbs* v. *State,* 190 *Ga.* 207 (9 S. E. 2d, 248) ; *Lyens* v. *State,* 133 *Ga.* 587, 597 (66 S. E. 792).

■ Objection was made to the testimony of officer M. V. Moss, a witness for the State, as follows : "I helped to get him out of the car, and he told me that he had been shot in a holdup." The objection appears to be that it was not shown that the deceased believed at that time that he was in the article of death. Ellis Barrett Jr. testified that on the way to the hospital the deceased said that they had killed him, and that he was going to die. Also, that the deceased complained of severe pain and of inability to breathe, and that he seemed to be worried principally about leaving his children. L. B. McTyre, who rode in the car with Barrett and the deceased, corroborated the testimony of Barrett. The objection has no merit.

■ In another ground of the motion for new trial it is averred that the court committed error in admitting in evidence that portion of the testimony of Calvin Cole, a State's witness, as follows : "I know Jimmie Lee Gibbs, who is jointly indicted with Willie Jenkins. I had a conversation with him concerning this shooting. That was last February. He made a written statement to me. This paper which you present to me is a statement which he made and signed. That is his signature." The objection to this testimony was as follows : "We ask the court to rule out all evidence relative to any conversation or statement signed by Gibbs, on the ground that there is no evidence to show that it was made in the presence of the defendant on trial, and therefore it is not admissible." It is to be observed that the testimony which it is contended the court should have excluded was merely to the effect that the witness knew Gibbs, that in February he had a conversation with him concerning the shooting, and that he made a written state-

ment which the witness identified. This testimony, even though inadmissible, could hardly be held so prejudicial as to require a new trial. It is not made to appear that the conversation or statement referred to was introduced in evidence, or that its contents were related to the jury. The statement referred to by the witness was made by Gibbs before the defendant's arrest, and it was not introduced in evidence, nor was it read to the jury. While the necessary inference from the witness's testimony concerning it was that the statement was a confession by Gibbs,. in which he implicated the defendant, there would have been no error had it actually been introduced in evidence. This is true for the reason that the statement was read to the defendant, and he agreed that it was correct with the one exception that Grant was not with them and had no connection with the crime. See *Gunter* v. *State,* 19 *Ga. App.* 772 (92 S. E. 314) ; *McCormick* v. *State,* 176 *Ga.* 21 (166 S. E. 762) ; *Davis* v. *State,* 114 *Ga.* 104 (7) (39 S. E. 906) ; *Mathis* v. *State,* 55 *Ga. App.* 727 (191 S. E. 272). It further appears that thereafter the defendant and Gibbs were taken to the scene of the crime by the officers, and there they both in the presence of each other related how the crime was committed and in what manner each participated. This ground shows no cause for a new trial.

■ In the remaining ground complaint is made that the judge erred in charging the jury on the subject of flight as indicating a consciousness of guilt. See *Hudson* v. *State,* 101 *Ga.* 520 (28 S. E. 1010) ; *Barnett* v. *State,* 136 *Ga.* 65 (70 S. E. 868) ; *Kettles* v. *State,* 145 *Ga.* 6 (88 S. E. 197). The error assigned is that "there was no evidence in the trial of the case wherein it was shown that the defendant fled at any immediate time after it is alleged the homicide was committed." The defendant's statement to the jury was in part as follows: "On January 7, 1939, that boy named Buddy, Oscar Morgan, and Cotton came down in a '36 Ford and asked me did we want to go to Dixie Hill. Me and Charlie, we were in the East Side Filling-Station at the corner of Ashby and Greensferry. Cotton got out, and there was no one that could drive but me. We got to Dixie Hill, and on the way back Buddy ·suggested that we get some cigarettes. Charlie got out and Oscar got out. I was standing· on this side of West View Drive, and when they· went to the store, and I heard some-

thing like an explosion, and I ran off." Ellis Barrett Jr. testified, that about the time of the homicide he was driving west on West View Drive; that as he approached the corner of West View and Laurel Avenue a car was parked almost on the corner on West View Drive, and (in his own words) "When I got almost to him, he suddenly started and swerved into the road, and I had to swerve in order to avoid being hit, and two negroes jumped in the car as he was going off. I had gotten past the intersection, and glanced back and saw a negro running around the corner, and he jumped at the car and missed it, and I turned around and went in the direction that he went. . . The negroes that ran to get in the car came from the south. . . That was going away from Mr. Adcock's store." The defendant was arrested some time after the crime, in a distant State. Under the foregoing evidence the complaint is without merit. Diligent examination of the record shows that the court did not err in overruling the motion for new trial. *Judgment affirmed. All the Justices concur.*