## 40790. CARTER v. THE STATE.

MARSHALL, Presiding Justice.

The appellant, Rex Carroll Carter, was indicted for malice murder, felony murder, armed robbery, and theft by taking. The offenses were perpetrated on Charles Aaron Crosby, Jr., at his apartment in Clayton County. Also indicted were Frank Kendall Humphries, John Anthony Roberts, and Benjamin Clyde Robinson. At the appellant's trial, at which the state was seeking the death penalty, the jury returned a verdict finding him guilty of felony murder, armed robbery, and theft by taking. The trial judge set aside the armed-robbery conviction as having merged into the felony-murder conviction. The jury did not impose the death penalty. The appellant was sentenced to life imprisonment for the felony-murder conviction, and he was given a consecutive 10-year sentence for the theft-by-taking conviction. This is his appeal.

The evidence at trial was, in part, as follows:

Humphries testified that on May 31, 1981, he, the appellant, Roberts, and Robinson went to the victim's home to burglarize it, because "we didn't have no money and we wanted to get high and stuff; so we went to hit somebody." Since the victim knew Humphries and Roberts, they waited in the woods outside of the apartment while Robinson and the appellant went to the apartment. The original plan was for the appellant and Robinson to gain entry to the apartment by offering to perform homosexual acts for money; they were then going to tie up the victim and signal for the remainder of the group to come to the apartment. However, they returned to the woods without doing this and then they went back to the apartment a second time; approximately 10 minutes thereafter, they signalled for Humphries and Roberts to come to the apartment. When Humphries entered the apartment, the victim was on the floor in a partially unclad state, and he was mumbling. Humphries further testified that either the appellant or Robinson tied up the victim, and that he thought it was

Robinson who beat in his head with an index card box. Some jewelry, a film projector, a camera, some pornographic films, a wallet, some change, and the victim's car were stolen.

Robinson testified, and in his testimony he corroborated the fact that he, the appellant, Roberts, and Humphries went to the victim's apartment, knocked him out, and robbed him. He testified that after he and the appellant had beat the victim with their fists, "somebody hit him with a box and I went and got a towel. I tied his hands up and tied his feet with a rag or something." He further testified that they then put a T-shirt around the victim's head.

After Robinson's arrest, he gave a written statement to the police that was admitted in evidence. In this statement, Robinson said that the appellant was the one who had hit the victim's head with the box; however, at trial Robinson testified that he could not remember who did this. In his statement to the police, Robinson also maintained that the appellant tied the T-shirt around the victim's neck.

The victim's body was discovered on June 1, 1981. The medical examiner conducting the autopsy testified that, in his opinion, the victim died prior to 5:00 p.m. on June 1, 1981, and, therefore, he could have died on the afternoon of May 31. The medical examiner further testified that although blows to the victim's head were sufficient to cause death, in his opinion the victim died of strangulation (as a result of the T-shirt being tied around his head).

The defense presented five witnesses who were neighbors of the victim, and these witnesses testified that they had seen him alive after 7:00 p.m. on May 31. Various of these witnesses testified that they had seen the victim sitting at his breakfast table reading the newspaper; other witnesses testified that they saw the victim get into his car and leave the apartment.

1. In Enumerations of error 1, 2, 3 and 4, the appellant argues that the evidence is insufficient to support the verdict. In so arguing, the appellant relies on the rule that proof of mere presence at the scene of the crime is insufficient to support a conviction. E.g., *Rutland v. State,* 129 Ga. App. 313 (199 SE2d 595) (1973). In addition, the appellant argues that this is a case based on circumstantial evidence, which does not exclude every other reasonable hypothesis save that of guilt. See OCGA § 24-4-6.

As we view the record, the evidence was sufficient to authorize a rational trier of fact in finding beyond a reasonable doubt that the appellant was guilty of the subject offenses. As held in *Jenkins v. State,* 190 Ga. 556 (1) (9 SE2d 909) (1940), "All of the participants in a plan to rob are criminally responsible for the acts of each, committed in the execution of the plan, and which may be said to be a probable

consequence of the unlawful design, even though the particular act may not have actually been a part of the plan." Accord *Fortner v. State,* 248 Ga. 107 (5) (281 SE2d 533) (1981) and cit.

2. In the fifth enumeration of error, the appellant argues that the trial court committed error in denying his motion for funds to hire an investigator and expert witnesses. In this appeal, the appellant argues that the expert witness was necessary to inquire into questions concerning the cause of death and time of death. At trial, the appellant argued that an investigator was necessary to help in the interviewing of witnesses.

In *Patterson v. State,* 238 Ga. 204 (232 SE2d 233) (1977), it was held that a defendant charged with possession or sale of a contraband substance has the right to have an expert of his own choosing analyze the substance. However, it subsequently has been held that the grant or denial of a motion for appointment of an expert witness lies within the sound discretion of the trial court, and where the defendant's conviction did not rest entirely on the state's expert evidence, and the state's expert was not shown to be incompetent or biased, it was held that the trial court did not abuse its discretion in denying such motion. *Jackson v. State,* 249 Ga. 751, 755(3) (295 SE2d 53) (1982) and cits. Accordingly, we hold that the trial court did not abuse its discretion in denying the motion here.

3. In the sixth enumeration of error, the appellant argues that the trial court erred in denying his general demurrer to the counts of the indictment charging him with felony murder, theft by taking, and armed robbery.

The felony-murder count alleges that the appellant caused the death of the victim while in the commission of armed robbery. The appellant contends that this count is defective, because it fails to specify the manner in which the appellant committed the armed robbery and does not specify the items stolen or the offensive weapon used. He also complains that this count fails to allege the date and time of the victim's death. In the count charging the appellant with theft by taking, it is alleged that the appellant took a certain 1978 Oldsmobile Cutlass automobile from the victim. The appellant argues that this description of the automobile is insufficient to reasonably inform the appellant of the property stolen.

"An indictment is not subject to general demurrer when it is written in the form set out in [OCGA § 17-7-54 (Code Ann. § 27-701)], and couched in the language of the statute alleged to have been violated. However, an indictment need not quote the exact language of the statute. An indictment should set out the alleged offense with sufficient specificity so as to give the defendant ample opportunity to prepare his defense, but it need not specify the crime by a specific

name or Code section number." Ga. Crim. Trial Prac., § 13-4, p. 128 (1977) (Footnotes omitted).

Here, the felony-murder indictment is couched in the language of the felony-murder statute, OCGA § 16-5-1 (c) (Code Ann. § 26-1101), and it sets out the offense with sufficient specificity so as to give the defendant ample opportunity to prepare his defense. The description of the automobile in the theft-by-taking indictment was sufficient. See *Pharr v. State,* 44 Ga. App. 363 (161 SE 643) (1931) and cits. The trial court did not err in overruling the appellant's general demurrer to these indictments.

Since the appellant's armed-robbery conviction has been set aside, the sufficiency of the indictment is now a moot question.

4. In the seventh enumeration of error, the appellant argues that the trial court erred in overruling his special demurrers to the indictment.

In this regard, the appellant complains of the fact that the indictment charges several offenses. This argument is clearly without merit. Multiple offenses which are blended together by concurrent acts so that they constitute one transaction may be joined. *Bennings v. State,* 53 Ga. App. 218 (1) (185 SE 370) (1936) and cits.

5. In the eighth enumeration of error, the appellant argues that the trial court erred in denying his challenge to the array of the grand jury.

In this regard, the appellant contends that the grand-jury list did not contain a representative cross-section of the following segments of the community: women with children under 14 years of age, blacks, poor people, and young adults between the ages of 18 and 30.

The evidence introduced at the hearing on the appellant's grand-jury challenge shows that the grand-jury list was taken from the traverse-jury list, which was in turn taken from the voter registration lists. According to the latest available census, the female population of the county is 56.7% and the black population is 4.17%. The grand-jury list from which the grand jury indicting the appellant was selected was 50% female and 5.35% black. Therefore, we hold that the appellant failed to establish the absence of a fair cross-section of blacks or women, in that the evidence shows no significant disparity between the percentages of these groups in the community and their presence on the grand-jury list. E.g., *Devier v. State,* 250 Ga. 652 (1) (300 SE2d 490) (1983); *Berryhill v. State,* 249 Ga. 442 (3) (291 SE2d 685) (1982) and cits.

As to the appellant's argument that the grand-jury list underrepresents young people and poor people, the record fails to establish that young people and poor people constitute in Clayton

County distinct and recognizable classes for the purpose of a jury challenge. *Mincey v. State,* 251 Ga. 255 (7) (304 SE2d 882) (1983) and cit.

6. In the ninth enumeration of error, the appellant argues that the trial court erred in denying his motion for an in-camera inspection of the prosecutor's file in order to search for material falling within the ambit of the appellant's Brady motion.

As held in *Tribble v. State,* 248 Ga. 274 (280 SE2d 352) (1981), the trial court is not required to conduct an in-camera inspection under a general Brady motion unless the defendant makes such a request after the prosecution has made its response to the motion. Here, the only dissatisfaction expressed by defense counsel after the state responded to the Brady motion was that criminal records of possible state's witnesses were not provided. The district attorney stated that if any witnesses had criminal records, this material would be provided. Defense counsel failed to renew his request for in-camera inspection. Therefore, we hold that under *Tribble,* the trial court did not err in failing to conduct the inspection. In addition, we have indicated that the holding of the United States Supreme Court in Brady does not extend so far as to require the prosecution to turn over to the defense criminal records of state's witnesses. See *Hines v. State,* 249 Ga. 257 (1) (290 SE2d 911) (1982).

7. In the tenth enumeration of error, the appellant argues that the trial court erred in denying his motion for change of venue.

In support of this motion, the appellant presented evidence of newspaper, radio, and television coverage of these crimes in and around Clayton County. However, in voir dire examination of prospective jurors it was determined that only one member of the jury panel had read or heard of the case, and this juror had not formed any opinion based on this publicity.

Under these circumstances, it cannot be said that the trial court abused its discretion in denying the motion for change of venue. E.g., *Jordan v. State,* 247 Ga. 328 (5) (276 SE2d 224) (1981).

8. In the eleventh enumeration of error, the appellant argues that the trial court erred in failing to excuse a prospective juror for cause.

"In order to disqualify a juror for cause, it must be established that the juror's opinion was so fixed and definite that it would not be changed by the evidence or the charge of the court upon the evidence. *Sullens v. State,* 239 Ga. 766 (1) (238 SE2d 864) (1977)." *Westbrook v. State,* 242 Ga. 151, 154 (3) (249 SE2d 524) (1978). Whether to strike a juror for cause lies within the discretion of the trial court. Id.

Here, the prospective juror stated in response to questioning by defense counsel that in her opinion the accused "had one strike

against him" because he had been indicted by the grand jury, that she honestly felt that the accused had to prove something in the case, and that she felt that it would create a hardship on her to serve as a juror in this case. However, upon subsequent questioning by the district attorney, the prospective juror stated that as a juror she could return a verdict based on the evidence and the law as given to her by the trial judge's charge.

We cannot say that the trial court abused its discretion in refusing to strike this juror for cause.

9. In the twelfth enumeration of error, the appellant argues that the trial court erred in limiting his questioning of prospective jurors on voir-dire examination.

Although OCGA § 15-12-133 (Code Ann. § 59-705) outlines the permissible scope of voir dire, the line of demarcation between those questions which fall within the scope of § 15-12-133 (Code Ann. § 59-705) and those questions which are beyond the scope of this statute is not always crystal clear. *Waters v. State,* 248 Ga. 355, 363 (3) (283 SE2d 238) (1981). Therefore, it has been held that the control of voir-dire examination is vested in the sound legal discretion of the trial judge. Id.

We cannot say that the trial judge abused his discretion in placing the limits on voir-dire questioning here. See *Todd v. State,* 243 Ga. 539 (7) (255 SE2d 5) (1979) and cits.; *Patterson v. State,* 154 Ga. App. 877 (1) (270 SE2d 86) (1980) and cits.; *Young v. State,* 131 Ga. App. 553 (2) (206 SE2d 536) (1974) and cits.

10. In the thirteenth enumeration of error, the appellant argues that the trial court erred in admitting certain letters received by Robinson.

Robinson testified that while he was in prison, he received these letters bearing the name and address of the appellant; however, Robinson also testified that he was unfamiliar with the appellant's handwriting. In any event, in these letters the appellant stated, among other things, that Robinson could prevent the appellant from getting the death penalty by testifying that he, Robinson, committed the murder.

The appellant argues that these letters were admitted in violation of the rule that a writing, alleged to be in the handwriting or signature of a party, is inadmissible unless the writing is proved or acknowledged to be genuine. *Gunter v. State,* 243 Ga. 651 (4) (256 SE2d 341) (1979) and cits. However, the genuineness of the writing may be proved by circumstantial evidence. Id.

Here, an expert handwriting analyst testified that these letters and another document identified as having been written by the appellant were written by the same individual. In addition, various

statements made in the letters were only within the knowledge of the appellant or one of his other accomplices, and the letters did bear the appellant's signature and address.

We therefore hold that a sufficient foundation was laid to authorize the admission of the letters.

11. In the fourteenth enumeration of error, the appellant argues that the trial court erred in denying his motion for mistrial because of the introduction in evidence of the handwriting testimony. The appellant complains that in his Brady motion, he specifically requested that he be furnished information concerning the analysis of any handwriting exemplars, but information concerning the handwriting testimony was not submitted to him.

The information concerning this handwriting testimony was not discoverable under the appellant's Brady motion, since it was not exculpatory. E.g., *State v. Madigan*, 249 Ga. 571 (2) (292 SE2d 406) (1982). However, the appellant also filed a pretrial motion demanding a copy of any written scientific reports in the possession of the prosecution and to be introduced against the appellant; but, this motion neither referred to OCGA § 17-7-210 (Code Ann. § 27-1302) (which is the statutory authority for the motion), nor requested that the scientific reports be produced 10 days prior to trial. Therefore, this pleading did not constitute a valid request for discovery under § 17-7-210 (Code Ann. § 27-1302). *State v. Meminger*, 249 Ga. 561 (1) (292 SE2d 681) (1982).

At trial, the prosecutor stated that he did not submit the report from the handwriting analyst to the defense until the previous day, because he did not receive the report until then. For the reasons given above, this was a sufficient compliance with the appellant's pretrial discovery motions.

12. In the remaining enumerations of error, the appellant argues that the trial court erred in failing to give various of his requests to charge the jury.

We hold that the trial court's refusal to give these requests to charge was not error, in that the requests to charge either were not correct statements of law as adjusted to the evidence in this case or were fairly given to the jury in the general charge of the court. E.g., *Shirley v. State*, 245 Ga. 616 (3) (266 SE2d 218) (1980) and cits.

*Judgment affirmed. All the Justices concur, except Smith, J., who concurs in the judgment only.*

DECIDED APRIL 24, 1984.

*Joseph M. Todd,* for appellant.
*Robert E. Keller, District Attorney, William L. McKinnon, Jr.,*

*Assistant District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr.,* for appellee.