A97A0739. HARKNESS v. THE STATE.
(485 SE2d 810)

BLACKBURN, Judge.

Gregory Paul Harkness appeals his convictions of rape, burglary, and two counts of aggravated sodomy. On appeal, Harkness contends that the trial court committed several errors regarding evidence, tes-

timony and jury selection, that the trial court should have granted his motion for directed verdict, and that his trial counsel was ineffective.

1. Harkness contends the trial court erred in denying his motion for directed verdict. The standard of review of the denial of a motion for directed verdict of acquittal is the "reasonable doubt" test of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). *West v. State*, 218 Ga. App. 341, 342 (461 SE2d 300) (1995).

Viewed in the light most favorable to the verdict, the evidence introduced at trial indicated that Harkness and the victim had been previously married, but were divorced on May 17, 1994, almost six months prior to the acts in question. On November 4, 1994, the victim was awakened in her bed by a hand being placed over her mouth and a hand hitting her head. The victim was unable to see who was in the room with her, but she sensed it was Harkness. Harkness tied her hands behind her back, put a blindfold over her eyes, and cut her T-shirt off her body. The victim testified that her vagina was penetrated with the intruder's penis, that the intruder's penis came into direct contact with her mouth and anus, and that these acts were accomplished without her consent and against her will. She further testified that Harkness did not have permission to come into her house on November 4, 1994.

The victim testified that she thought the intruder was Harkness due to the intruder's behavior that was consistent with behavior Harkness displayed during their marriage, to wit: the way the intruder popped her on the head; the intruder's use of the fan to blow air across the bed during sexual acts; turning on the lights during sexual acts; the way the intruder checked her heart rate; and the way the intruder placed a pillow under her head when she could not breathe. The victim further testified that prior to trial Harkness offered her money if she would change her story.

Dennis Stewart testified that Harkness asked Stewart to provide him with a semen sample to give to the police for its investigation in this case. Harkness turned Stewart's semen sample over to the police as if it was his own semen sample. Tommy Chastain testified that Harkness asked him to make threatening phone calls to the victim, which he did. Harkness was present when the calls were made, and he told Chastain what to say. Harkness arranged for the police to wiretap his phone due to harassing phone calls he was receiving. Harkness then arranged for Chastain to call his home and admit to raping the victim.

Although Harkness did not admit to committing the crimes charged, he incriminated himself in his statement to police. Harkness stated, "[i]f I tell you, I know I'll get twenty years, five to twenty, and I will not see my son, Joshua, for a long time. I cannot do that

right now. . . . If I talk to Jane and Jane doesn't want to prosecute me, the state will prosecute me. I know that. This is going to kill my mother and father. I do not need to go to jail right now." In response to a question about what he did with the other part of the pillowcase used to tie the victim's hands, Harkness replied that he could not remember what he did with it.

Based on the foregoing, we conclude that a rational trier of fact could have found Harkness guilty beyond a reasonable doubt of the crimes charged. See *Jackson v. Virginia*, supra. The trial court did not err in denying Harkness's motion for directed verdict.

2. Harkness contends that his trial counsel was ineffective. However, Harkness failed to secure his trial counsel's testimony at the motion for new trial. Although Harkness had a subpoena issued to secure his trial counsel's attendance at the motion for new trial, he attempted to serve it by certified mail. Proof of service of a subpoena served in this manner requires the filing of the signed return receipt with the court, and same is not in the record. See OCGA § 24-10-23. Therefore, only those matters which relate to alleged errors made during the course of the trial as shown by the transcript can be reviewed. See *Bowman v. State*, 222 Ga. App. 893, 899 (6) (476 SE2d 608) (1996).

Harkness's assertions of his trial counsel's failure to interview certain witnesses cannot be reviewed without his trial counsel's testimony or other proof of the conduct of trial counsel and the reasons therefor. See id. Additionally, Harkness's contention that his trial counsel failed to consult an expert cannot be reviewed. Harkness's remaining contentions regarding his trial counsel's ineffective representation relate to his failure to file any motions or jury charges on Harkness's behalf. However, Harkness neither shows what motions or charges should have been filed nor does he address what harm was caused by the lack of motions and jury charges. "To establish a claim of ineffective assistance at trial requiring reversal of a conviction, a criminal defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense." *Lakes v. State*, 266 Ga. 389 (2) (467 SE2d 566) (1996).

Harkness's failure to show what prejudice was caused by his trial counsel's failure to file motions or jury charges is fatal to his claim of ineffective assistance of counsel. The trial court correctly denied Harkness's motion for new trial on this ground.

3. Harkness contends the trial court erred by allowing audio tapes to be sent out with the jurors for use during their deliberations.

The State concedes that it was error for the tapes to be sent out with the jury, but contends that there is no evidence that the jury actually played the tapes in the jury room. Under these facts, it would be presumed that the jury would have reviewed all the "evi-

dence" in accordance with the trial court's instructions, and this argument is without merit.

It is clear that the trial court erred in allowing the audio tapes to go out with the jury during their deliberations. "The jury should not be permitted to take with them for consideration in the jury room, depositions, dying declarations, confessions or written statements of the defendant, or other instruments of evidence depending for their value on the credibility of the maker. Such written testimony may have an unfair advantage over oral testimony by speaking to the jury more than once." (Citation and punctuation omitted.) *Elliott v. State*, 168 Ga. App. 781, 786 (4) (310 SE2d 758) (1983). Similarly, audio recordings should not be allowed in the jury room for use during deliberations. Id. at 787.

"However, the question remains whether this act was harmful error requiring a reversal and a new trial. This court has adopted the highly probable test when determining if an error is harmless. If it is highly [probable] that the error did not contribute to the judgment then the error is harmless." *Owens v. State*, 248 Ga. 629, 631 (284 SE2d 408) (1981).

Based on the strength of the evidence against Harkness, as discussed in Division 1 above, we conclude that the playing of the audio tapes in the jury room did not contribute to the verdict and was, therefore, harmless error.

4. Harkness contends that the trial court erred in allowing a juror to spend time alone. After deliberations had begun, the jury sent a note to the trial court which stated: "We have one juror who needs to be alone for about fifteen minutes. Is this possible?" The trial court informed the jury as follows: "There is a room outside your jury room, but before you come into the courtroom. The door is to the left as you come out of the jury room. The juror in question can go into this room for fifteen minutes. The foreman shall ensure that the time will not exceed fifteen minutes. However, during the time this juror is out of the presence of the other jurors, the remaining jurors *cannot* discuss this case."

The rule in Georgia is that "where there has been an improper separation of the jury during the trial, the prisoner, if found guilty, is entitled to the benefit of the presumption that the irregularity has been hurtful to him; and the onus is upon the State to show, beyond a reasonable doubt, that the defendant has sustained no injury on account of the separation." (Citation and punctuation omitted.) *Richmond v. State*, 210 Ga. 403, 404 (80 SE2d 178) (1954).

In the present case, the trial court went to great lengths to ensure that the separated juror would be alone and kept away from any outside influence. The juror was allowed to go into a room that contained only a chair, some equipment and a couple of blank chalk

boards. The room was in the same area as the jury deliberation room, so that the juror was not allowed out in the open. Furthermore, prior to the juror's separation, Harkness had no objection to the manner in which the juror was separated; he objected solely to the fact of the separation.

This case is controlled by *Richmond*, supra, where the Supreme Court of Georgia determined that no error occurred upon a jury member's separation where there was no *"opportunity* for injury to the defendant." (Emphasis in original.) Id. at 405 (1). The Court determined that "a mere trifling and immaterial irregularity in the conduct of a juror will not require the grant of a new trial." Id. Therefore, the trial court did not err in denying Harkness's motion for new trial on this ground.

5. Harkness enumerates as error the trial court's refusal to excuse a potential juror for cause. During voir dire, a potential juror responded that her brother was in law enforcement in Rockdale, South Carolina. Thereafter the following colloquy took place: "Q. Would that affect your ability to be fair and impartial in this case? A. No. Q. You hesitated? A. I mean I have heard my brother, you know, tell stories about things that have happened to him as a police officer, but I'm not with him that often, since he is in South Carolina. Q. You don't think you'd believe a police officer's testimony over another witness just because he's a police officer, do you? A. I would have to say honestly yes, I would. Q. So you're saying that would affect your ability to be fair and impartial in this case, is that correct? A. As much as I wouldn't want it to be, I think it would, knowing my brother as a police officer and hearing his side more than any other side, I think I would tend to believe."

Whereupon Harkness's counsel moved to disqualify the juror, and the trial court asked: "Ms. Ethelstone, my question is this: Your brother is a law enforcement officer, and you have stated that because of that you probably would be more inclined to believe law enforcement officers than others. Is that a correct statement of what you said?" "[A.] I think I would tend to. [Q.] Tend to, all right. [A.] Yeah. I can't say positively I would. I guess I have heard more stories from a police officer than I have of any other criminal. I've never really talked to a criminal, and I've only heard the police officer's side. [Q.] Right. All right now, the question I want to ask you is: Despite of what you have told me, and again, these are very difficult questions, but only you can answer them, and we need to know what your attitude about this particular matter is. Despite that, could you fairly consider all of the evidence that's presented, coming from police officers as well as other witnesses — consider fairly all of the evidence and render an impartial verdict by applying the evidence to the Court's charge, regardless of who the witnesses were? Do you

understand that question? [A.] Yes, sir, I do. [Q.] What's your answer to that? [A.] Yes, I could."

"Before a juror can be disqualified for cause, it must be shown that an opinion held by the potential juror is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence." *Johnson v. State*, 262 Ga. 652, 653 (2) (424 SE2d 271) (1993). In the present case, while the juror did express some concern over whether she would believe a police officer's testimony more than someone else's testimony, she did inform the judge that she could fairly consider all the evidence and render an impartial verdict. Therefore, while the better practice would be to excuse such a juror for cause, the facts here do not require such action. See id.

6. Harkness contends the trial court erred by allowing the admission of hearsay testimony. We cannot agree. The statements complained of either explained the officer's conduct in the continuing investigation, see *Teague v. State*, 252 Ga. 534 (314 SE2d 910) (1984), or were prior statements made by witnesses present at trial, under oath, and subject to cross-examination. See *Moak v. State*, 222 Ga. App. 36, 41 (473 SE2d 576) (1996). The trial court did not err in admitting the statements over Harkness's hearsay objections.

7. In his final enumeration of error, Harkness contends the trial court erred in allowing the State's expert to testify to his opinion based upon matters not in evidence. Contrary to Harkness's position, the State's expert properly testified as to his opinion based upon the data gathered by another where he was the supervisor of the report maker and he checked the procedures for correctness. See *Brown v. State*, 206 Ga. App. 800 (427 SE2d 9) (1992). Therefore, the trial court did not err in denying Harkness's motion for new trial based upon this ground.

*Judgment affirmed. Pope, P. J., and Johnson, J., concur.*

DECIDED APRIL 2, 1997.

*Bruce S. Harvey, David S. West*, for appellant.
*Michael H. Crawford, District Attorney, Earnest J. McCollum, Assistant District Attorney*, for appellee.