S07A1418. VELAZQUEZ v. THE STATE.
(655 SE2d 806)

HINES, Justice.

David Heredia Velazquez was tried before a jury and found guilty of felony murder in connection with the fatal stabbing of Mario Cruz. The issue of Velazquez's competency was tried before a special jury, and he was found competent to stand trial. Velazquez appeals his felony murder conviction and the denial of his motion for new trial, as amended, challenging both the competency proceeding and the criminal trial. Finding the challenges to be without merit, we affirm.[1]

---

[1] Cruz was murdered on November 27, 2004. On February 17, 2005, a Henry County grand jury indicted Velazquez for the malice murder of Cruz and for the felony murder of Cruz while in the commission of aggravated assault. On June 29, 2005, Velazquez filed a special plea of incompetency to stand trial. On November 1, 2005, the superior court entered an order finding that, by the stipulation of the parties, Velazquez was incompetent to stand trial. On May 2, 2006, the State filed a motion for a rehearing on the issue of Velazquez's competency to stand trial. A jury trial was held on the special plea of incompetency to stand trial May 8-9, 2006, and Velazquez was found mentally competent to stand trial. Velazquez was tried on the criminal charges before a different jury May 10-15, 2006, and was found guilty of felony murder; the jury was deadlocked on the malice murder count, and the superior court declared a mistrial on that charge. On May 15, 2006, Velazquez was sentenced to life in prison for the felony murder. A motion for new trial was filed on June 5, 2006, and an amendment to the motion regarding the

The evidence construed in favor of the verdict on the felony murder charge showed that on the evening of November 27, 2004, Velazquez went to a mobile home where his estranged wife, Christina Guzman, and her boyfriend, Mario Cruz, were staying. Velazquez knocked on the door of the mobile home, pushed it open, and told Cruz and Guzman that he wanted to speak with them. Cruz responded that they should go outside because they were at the home of another. An altercation ensued, and Velazquez began to stab Cruz with a knife. Cruz was unarmed. Cruz sustained 53 stab or incised wounds on his body, including wounds on his chest, neck, and back, and defensive wounds on his hands.

Velazquez and Cruz were former co-workers and had a history of disputes. After the marital estrangement of Velazquez and Guzman, Cruz and Guzman lived together. Velazquez had paid $6,300 to bring his wife from El Salvador, and he wanted Cruz to reimburse $1,000 of that money. Velazquez had threatened Cruz at work more than ten times. Several days before the fatal encounter, Velazquez screamed at Cruz, "I told you, I told you many times just be careful, watch your back, because this time it's serious. And I'm going to kill you. I'm going to kill you."

After the killing, Velazquez fled. He dumped his bloody clothes at a nearby grocery store. He asked a friend to drive him to New York. During the trip, Velazquez told the friend that he had killed with a knife "[t]he man who had taken away his wife." He disposed of the knife somewhere on Interstate 85 in North Carolina. A New York detective assisted in the arrest of Velazquez. After placing Velazquez in a van for transport, the detective asked if he was okay. Velazquez replied, "Yes, I'm okay. I know why you guys are here. My co-worker and my wife, I'm sorry for what happened, but they both deserved it."

*Competency Proceeding Challenge*

1. Velazquez contends that the trial court erred in denying his motions for a directed verdict[2] and for a new trial because the evidence showed that he was not competent to stand trial. But, the contention is unavailing.

In a competency proceeding, the defendant has the burden of proving incompetency by a preponderance of the evidence. *Adams v.*

---

criminal charges was filed on February 26, 2007, as well as an amendment to the motion for new trial challenging the competency proceeding. The motion for new trial, as amended, was denied on March 28, 2007. On April 4, 2007, Velazquez filed a notice of appeal to the Court of Appeals. On May 25, 2007, the Court of Appeals transferred the appeal to this Court, and the case was docketed in this Court on June 5, 2007. The appeal was argued orally on October 15, 2007.

[2] Velazquez fails to show that he made a timely motion for a directed verdict.

*State*, 275 Ga. 867, 867-868 (3) (572 SE2d 545) (2002). A criminal defendant is competent to stand trial if he is capable of understanding the nature and object of the criminal proceedings and of assisting his attorney with his defense. Id. Velazquez and the State offered opposing expert opinions on the issue of Velazquez's competency. The special jury having found Velazquez competent for trial, this Court's role is to determine, after reviewing the evidence in the light most favorable to the State, whether a rational trier of fact could have found that Velazquez failed to prove by a preponderance of the evidence that he was incompetent to stand trial. *Sims v. State*, 279 Ga. 389, 391 (1) (614 SE2d 73) (2005).

In support of his claim of incompetency, Velazquez presented the testimony of Dr. Enfield, a forensic psychologist, and Dr. Norman, a practitioner of forensic psychiatry.

Dr. Norman, who interviewed Velazquez, a native Spanish speaker, through the aid of an interpreter, was of the opinion that Velazquez was not competent to stand trial. Even though Dr. Norman believed that Velazquez could not adequately assist his attorney in his defense, he also testified that Velazquez was aware that he was charged with killing someone; that he had a basic understanding that he might go to prison if he was convicted of the matter; that although he did not understand the adversarial nature of the proceedings, he had a rudimentary knowledge of the roles of the prosecutor and the defense attorney; that in the first evaluation, his thought processes were logical and goal-directed; and that he showed adequate verbal skills and was aware of the charges against him. Dr. Norman also acknowledged that his finding of Velazquez's incompetence to stand trial was based "to a degree" on Velazquez's lack of understanding of the American justice system and the language barrier.

Dr. Enfield concluded that Velazquez was incompetent to stand trial at the time he examined him in August 2005, nearly a year before the competency trial. Even so, Dr. Enfield, who interviewed Velazquez also through the aid of an interpreter, acknowledged that at the time of the examination he had no background information on Velazquez except that contained in Velazquez's "self-report" and the police reports; that Velazquez reported that he had no history of mental health treatment prior to his arrest; that even though Velazquez's answers to questions were inconsistent, he was a concrete thinker who was able to give simple answers to simple questions about key players in the legal process; he understood he was in trouble; and his explanation of the charges against him was reasonably consistent with the police report of the stabbing. Dr. Enfield conceded that Velazquez's different cultural background significantly contributed to his assessment that Velazquez was incompetent in August 2005.

The State offered the testimony of psychiatrist, Dr. Salinas, who performed a competency evaluation on Velazquez, which included review of Velazquez's records, speaking with those involved in Velazquez's treatment, and direct discussion with Velazquez; she met with Velazquez a week before the competency trial. Dr. Salinas, who is fluent in Spanish, testified that she was able to effectively communicate with Velazquez; that she spoke with Velazquez about his rights to remain silent and not to incriminate himself by answering questions; that she discussed with him the nature and object of the proceedings; that she learned that Velazquez had served 15 years in the military in El Salvador, and had held several other jobs in El Salvador, including farming and working at a currency exchange; that she asked Velazquez a series of questions about a trial and what happens in court; and that Velazquez was able to identify the roles of the individuals involved in the court proceeding. She related that Velazquez stated that "his lawyer is supposed to defend him and help him get out of jail" and that " '[t]he district attorney . . . condemns me. He wants to make sure I serve time. The judge takes the decision and gives you the sentence. The jury listens to what the witnesses say and makes a decision of guilt or innocence.' " And she said that Velazquez further stated that "the witnesses make a declaration of what they saw, if they were there," and that he talked "about discrepancies in the stories of witnesses." He was able to talk specifically about the legal file in his case, pointing out to Dr. Salinas claimed discrepancies between what was in the file and what he stated actually occurred. Velazquez also talked about his justification defense in the case, and related his version of the fatal stabbing and his actions following the killing, including his trip to New York and his disposal of the knife. Velazquez was aware of the possible consequences if he was convicted, including a sentence of life in prison. Dr. Salinas also discussed with Velazquez the hypothetical issue of plea bargains; she presented him with four punishment scenarios, and he chose the option that gave him the least jail time. Dr. Salinas further discussed the fact that if he was to enter a plea he would give up the right to a jury trial. Velazquez stated that he could work with his lawyer, and when asked what he could do to help his lawyer, he responded "to tell him what happened, to tell him the truth, to tell him what happened that day." Even though Dr. Salinas believed that Velazquez had some "intellectual limitations" and a problem with literacy, she found him capable of rational and logical discussion about the circumstances of the incident to be tried and capable of assisting in his defense. Dr. Salinas stated unequivocally that Velazquez understood the nature and object of the legal proceedings and that he was competent to stand trial.

Considering the evidence in the light most favorable to the State, it must be concluded that a rational trier of fact could have found that Velazquez failed to prove by a preponderance of the evidence that he was incompetent to stand trial. *Sims v. State*, supra; see also *Biggs v. State*, 281 Ga. 627, 630 (3) (642 SE2d 74) (2007).

2. There is no merit to Velazquez's contention that the trial court erred in denying his motion for a new trial because the court improperly allowed the State to repeatedly refer to an evaluative report regarding competency by an expert, Dr. Walker, who was not called to testify.

Velazquez cites a specific reference to Dr. Walker by Dr. Salinas. However, in the cited instance, Dr. Salinas testified merely that Dr. Walker asked her to perform the competency evaluation on Velazquez and that Dr. Walker had already done such an evaluation on him. Moreover, prior to Dr. Salinas's testimony, the defense itself elicited testimony about Dr. Walker's evaluation from its own expert, Dr. Norman, including that Dr. Walker was of the opinion that Velazquez's competency had been restored. Therefore, Dr. Salinas's references to Dr. Walker's evaluation were merely cumulative of Velazquez's own evidence. See *Culmer v. State*, 282 Ga. 330, 334 (3) (647 SE2d 30) (2007).

3. There is likewise no merit to Velazquez's claim that the trial court erred by not granting a new trial in that it allowed Dr. Salinas to offer an opinion about his competency based on hearsay, including Dr. Walker's report and conversations with others. As noted, Dr. Salinas's opinion was based on her own interview of Velazquez as well as her review of his medical records and conversations with other experts who had evaluated him for competency. In the situation in which an expert personally observes data collected by another, the expert's opinion is not objectionable merely because it is based, in part, on the other's findings. *Roebuck v. State*, 277 Ga. 200, 202 (1) (586 SE2d 651) (2003). Even when an expert's testimony is based on hearsay, the expert's lack of personal knowledge does not mandate the exclusion of the opinion but merely presents a jury question as to the weight which should be accorded the opinion. Id.

4. Velazquez further contends that the trial court erred by not granting him a mistrial or a new trial in that it permitted the State to ask Dr. Salinas questions about facts and issues related to guilt or innocence, which were prejudicial to him and not "admissible" in determining competency. He complains specifically about the State asking Dr. Salinas whether he mentioned a defense, his flight to New York, or his disposal of the knife and his bloody clothes.

However, neither a mistrial nor a new trial was warranted on this basis. Evidence is not inadmissible at a competency proceeding simply because it might also be relevant to the issue of guilt; as long

as the evidence is sufficiently relevant and material to the issue of mental incompetence, it is properly admitted at a competency trial. *Black v. State*, 261 Ga. 791, 794 (2) (410 SE2d 740) (1991). The questions and Dr. Salinas's responses clearly were relevant to determine Velazquez's ability to assist his attorney in preparation of his defense.

5. There is no merit to Velazquez's claim that his motion for new trial should have been granted because the trial court erroneously sustained the State's objection to his use of a diagram during closing argument, thereby limiting his argument.

The State objected to defense counsel's diagram of the evidence, which it believed implied that the side with the most witnesses should win. The trial court did not state that it was sustaining the objection, nor did it instruct the jury to disregard any such evidence, but merely commented to defense counsel about the law regarding the number of witnesses in its proposed charge to the jury, stating, "there's no need to get beyond that. It's in there." To that statement, defense counsel responded, "Okay. Thank you." Pretermitting the issue of defense counsel's acquiescence, there was effectively no limitation on Velazquez's presented diagram during closing argument.

6. There is also no merit to Velazquez's claim that he is entitled to a new trial because the trial court allegedly improperly commented to the jury about the State's objections during his closing argument. The State objected after defense counsel apparently argued that the State failed to produce certain documents upon which Dr. Salinas based her opinion, thereby implying that the State had a duty to produce them.[3] And the trial court sustained the objection merely noting that in the competency proceeding, each side had the right to subpoena records, and that if the defense wanted the documents in question it was its responsibility to obtain them.[4] Velazquez fails to show how such comments were improper.

7. Velazquez fails in his assertion that he was due a new trial because the trial court, in its pattern instruction to the jury regarding mental competency,[5] refused to give additional language from a prior

---

[3] There is no transcript of the closing arguments, but rather only of counsel's objections during such arguments and the trial court's rulings thereon.

[4] The trial court stated, "that in this particular proceeding each party has the right to subpoena whatever records they want. And this is a civil proceeding, not a criminal proceeding, and the burden is on you, not on the State."

[5] The trial court charged,

> The question for your determination by your verdict is whether the accused, David Heredia Velazquez, is at this time capable of understanding the nature and object of the proceedings, understanding the accused's own situation in reference to such proceedings, and giving the attorney representing the accused such assistance as

version of the pattern charge.[6] The refusal to give a requested charge, even though it is a correct statement of law and pertinent and material to an issue in the case, is error only if it contains information that is not substantially covered by the charge actually given. *Walker v. State*, 282 Ga. 406, 408 (2) (651 SE2d 12) (2007). The trial court fully instructed the jury on the issue of competency and the burden of proof, and it was not necessary for the trial court to give the additional language requested by Velazquez. *Lyons v. State*, 282 Ga. 588 (652 SE2d 525) (2007).

## Criminal Trial Challenge

8. Velazquez contends that he is entitled to a new trial because the trial court erred in refusing to grant his motion to suppress his comments to the detective from New York who was involved in his arrest. He argues that suppression was warranted because he was not given his *Miranda*[7] rights even though he was in custody and the detective initiated conversation. However, the contention is unavailing.

In this Court's review of a trial court's grant or denial of a motion to suppress, the trial court's findings on disputed facts will be upheld unless clearly erroneous, and its application of the law to undisputed facts is subject to de novo review. *State v. Nash*, 279 Ga. 646, 648 (2) (619 SE2d 684) (2005). The issue of whether a statement was the result of an interrogation or was instead volunteered is a determination of fact for the trial court, and it will not be disturbed unless it is clearly erroneous. *Findley v. State*, 251 Ga. 222, 225 (1) (304 SE2d 898) (1983).

At the *Jackson-Denno*[8] hearing, the detective testified that Velazquez made his comments after he merely asked Velazquez whether he was okay. When a defendant makes a voluntary statement without being questioned or pressured by an interrogator, the statement is admissible even in the absence of *Miranda* warnings; a

---

a proper defense to the charges demands. And that says charges; it should be charge.
See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, Third Ed., § 3.19.20.

[6] Velazquez requested that the trial court additionally charge:

To be competent to stand trial, the defendant must be capable of performing all three of these functions. In this regard, I charge you that if you should find by a preponderance of the evidence that the defendant, by virtue of his or her mental condition, lacks the ability to perform any one of these three functions, it would be your duty to find in favor of the defendant's special plea of incompetence to stand trial.

[7] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[8] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

defendant's voluntary and spontaneous outburst not made in response to custodial questioning or interrogation is admissible at trial. *State v. Davison*, 280 Ga. 84, 87-88 (2) (623 SE2d 500) (2005). Indeed, law enforcement officers do not have a duty to prevent a defendant from talking about the criminal incident if the defendant wishes to do so; they must not interrogate but they need not refuse to listen. *Tennyson v. State*, 282 Ga. 92, 93 (3) (646 SE2d 219) (2007).

There was evidence to support findings that prior to the defendant's inculpatory comments there was no interrogation by the detective, but merely an initial inquiry into the defendant's well-being, and that the defendant volunteered the information. Thus, this Court cannot conclude that the trial court erred in denying Velazquez's motion to suppress.

9. Velazquez next contends that the trial court erroneously refused to give his requested jury charges on justification/mutual combat and on adulterous conduct as provocation for voluntary manslaughter as a lesser included offense. But, this contention too is unavailing.

The trial court instructed the jury both on the defense of justification in general and on self-defense specifically. But, the trial court did not give Velazquez's requested charge on mutual combat, and rightly so. A request to charge must be legal, apt, and precisely adjusted to some principle involved in the case, and it must be authorized by the evidence; if any portion of the request to charge is deficient in such requirements, the request should be denied. *Roberts v. State*, 282 Ga. 548, 553 (12) (651 SE2d 689) (2007). The evidence in this case did not authorize a charge on mutual combat. Velazquez's own trial testimony was that he was not an aggressor in the encounter with Cruz, but started stabbing Cruz in an effort to defend himself. See *McKee v. State*, 280 Ga. 755, 756 (2) (632 SE2d 636) (2006).

Velazquez further claims that the trial court should have given the jury his requested instruction on adulterous conduct as provocation for voluntary manslaughter which was advocated in the special concurrence in *Ricketts v. State*, 276 Ga. 466, 476 (1) (579 SE2d 205) (2003). Even assuming arguendo the general appropriateness of such instruction, the evidence in this case did not warrant it. *Roberts v. State*, supra. There was no evidence that Velazquez acted solely as the result of a serious provocation, adultery or otherwise, that excited in him a sudden, violent, and irresistible passion, so as to authorize a finding of voluntary manslaughter. See OCGA § 16-5-2 (a).[9] In fact,

[9] OCGA § 16-5-2 (a) provides:

Velazquez testified that he was angry with Cruz because he owed him money and that he went to see Cruz in order to reach an agreement about the money.

10. Finally, there is no merit to Velazquez's contention that the trial court erred in not granting his motion for a new trial because it gave "its own deviation from the pattern *Allen*[10] charge" which had a "tone" that intimidated and coerced the jury into a unanimous vote on the felony murder count.[11] The charge portion at issue did not tell the jury, either expressly or impliedly, that it had to reach a verdict. It instructed merely that the jurors were obligated to continue to participate and deliberate. The *Allen* instruction, as a whole, was not coercive so as to cause a juror to abandon his or her honest conviction for reasons other than those based upon the trial or the arguments of other jurors. *Lowery v. State*, 282 Ga. 68, 71 (4) (a) (646 SE2d 67) (2007). That the jury was not intimidated into believing that it had to reach verdicts on the charges against Velazquez was borne out, not only by the nearly two-hour interval between the *Allen* instruction and the verdict and the poll of the jury, but by the fact that the jury did deadlock on the charge of malice murder. See *Burchette v. State*, 278 Ga. 1, 2 (596 SE2d 162) (2004); *Mayfield v. State*, 276 Ga. 324, 330 (2) (b) (578 SE2d 438) (2003).

---

A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person; however, if there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, of which the jury in all cases shall be the judge, the killing shall be attributed to deliberate revenge and be punished as murder.

[10] See *Allen v. United States*, 164 U. S. 492 (17 SC 154, 41 LE 528) (1896).

[11] The portion of the *Allen* charge at issue was the following:

Now, ladies and gentlemen, deliberation means exactly what was described in here, and that is discussing the issues involved in this case that have to be discussed in determining what you find the evidence to be and basing a verdict upon that evidence. Each of you, again, should, as it says here, reexamine your opinions, the ground for those opinions, and then discuss further.

Now, Mr. Foreperson, if at any time anyone quits deliberating – I've never had this happen in my court as far as, I've read about it in the appellate opinions and in federal court where sometimes one juror just quits talking and shuts off, closes their ears, their eyes. One of them I think even got in a chair and stuck it in a corner and turned his back on everybody. I don't expect that to happen. And that tells me that deliberations are not happening because you can't have deliberations when nobody's participating, if one or more quit participating.

So, if the deliberations break down and there's no participation, then that's what I need to know, if that happens. If you get a verdict, of course, obviously I need to know that.

11. The evidence was sufficient to enable a rational trier of fact to find Velazquez guilty beyond a reasonable doubt of the felony murder of Mario Cruz. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgments affirmed. All the Justices concur.*

DECIDED JANUARY 8, 2008.

*Gary V. Bowman*, for appellant.

*Tommy K. Floyd, District Attorney, Alicia C. Gant, Assistant District Attorney, Thurbert E. Baker, Attorney General, Mary N. Kimmey, Assistant Attorney General*, for appellee.