A08A0611. DUNN v. THE STATE.
(665 SE2d 377)

BARNES, Chief Judge.

A jury convicted Mitchell Lebron Dunn of methamphetamine possession, misdemeanor marijuana possession, and several traffic violations, and he was sentenced as a recidivist to serve 15 years in prison. He appeals, contending that the trial court erred in overruling his motion in limine and permitting a laboratory supervisor to testify that the substance found in Dunn's car was methamphetamine. He argues that her testimony was based on inadmissible

---

hearsay and, under *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004), violated his Sixth Amendment right to confront witnesses against him. For the reasons that follow, we affirm.

A Walker County deputy sheriff stopped Dunn for speeding. Dunn could not produce proof of insurance, and the license plate on Dunn's vehicle was registered to a different truck. The deputy retrieved another license plate from inside Dunn's truck, but while the renewal decal on that plate was registered to Dunn's truck, the actual license plate was registered to a different vehicle. Another deputy patted Dunn down and, with Dunn's consent, retrieved less than an ounce of marijuana from Dunn's front pocket. The first deputy smelled burned marijuana when he obtained the second license plate from inside the truck, and Dunn consented to a search of the vehicle. Among other things, the search revealed a brown, zippered bag containing white powder in a plastic bag. Dunn was arrested and charged with possession of marijuana, possession of methamphetamine, speeding, driving without insurance, and driving with an improper tag.

A deputy sheriff tested the marijuana and sent the white powder to the state crime lab. The state crime lab had a large backlog of items to test, so it forwarded the white powder to a Pennsylvania laboratory for testing. Because only the laboratory supervisor was included in the State's witness list, and not the laboratory technician who actually tested the powder, Dunn filed a motion in limine to prohibit the State from eliciting testimony from the supervisor regarding the results of the technician's tests. He argued that such testimony would be inadmissible hearsay in violation of his right to confront witnesses against him, as elucidated in *Crawford*. Without the opportunity to cross-examine the technician who tested the substance as to how she set up the machine, "how she programmed it, what she did with the material when she placed it in the machine for the testing," then the evidence was hearsay. The trial court denied the motion.

After establishing the chain of evidence, the supervisor testified that the technician performed two tests on the powder. The technician first performed a color test, a preliminary test used to give the technician an idea of what kind of drug might be contained within the tested material. The supervisor did not discuss any details about the color test, which was not admitted into evidence or into the record. Second, the technician performed a gas chromatography/mass spectrometry (GCMS) test. The supervisor explained how the GCMS test worked.

> [A] small amount of material is dissolved into a liquid and it's injected into the instrument. It enters the gas chromatography instrument which is a heated environment with a column. When it goes through the area it's separated into component parts. From there it's then put into the mass spectrometry portion of it and it's bombarded with negatively charged particles which cause the sample to fragment and break apart. It's the fragmentation pattern, the way it fragments is the way we do an identification. . . . [U]nder controlled circumstances [chemicals] have their own unique fragmentation.

The instrument generates a printout containing a graph and numerical data that is interpreted by the chemist. The supervisor testified that she examined the data the GCMS test of the material generated in this case and concluded, based on her own expertise, that the material contained methamphetamine. She did not watch the technician test the material or perform the quality control test used to ensure the machine was working properly, and agreed that if the test were performed incorrectly it would yield a different result than if it were performed correctly. The report itself was not introduced into evidence. The only evidence offered at trial of the chemical makeup of the substance, an essential element of the crime, was the supervisor's testimony based solely on the technician's lab report. The jury convicted Dunn.

1. On appeal, Dunn contends that the trial court erred in allowing the supervisor to testify that the white powder found in his car was methamphetamine, because her testimony was based on inadmissible hearsay evidence and violated his Sixth Amendment right to confront the witnesses against him. He argues that the data in the reports generated by the tests constituted "testimonial" evidence, and thus were inadmissible unless he could cross-examine the technician who performed them. Because the supervisor did not prepare the sample or inject it into the machine, he asserts, Dunn was unable to cross-examine her regarding these initial steps, and thus his right to confrontation was violated. The State responds that the testimony was admissible because the supervisor, who was qualified as an expert, reviewed the data and came to the independent opinion that the substance tested contained methamphetamine.

In *Crawford*, the U. S. Supreme Court ruled that the State's admission of a testimonial statement against the accused, who had no opportunity to cross-examine the witness, violated the Sixth Amendment. Id. at 68. "Under *Crawford*, the crucial determination about whether the admission of an out-of-court statement violates the confrontation clause is whether the out-of-court statement is

YALE LAW LIBRARY

testimonial or nontestimonial." *California v. Geier*, 41 Cal. 4th 555, 597 (161 P3d 104) (2007). In doing so, the Supreme Court expressly overruled *Ohio v. Roberts*, 448 U. S. 56 (100 SC 2531, 65 LE2d 597) (1980), under which a witness's out-of-court statement was admissible if the witness was unavailable and the statement contains "adequate indicia of reliability," such as falling within a "firmly rooted hearsay exception" or bearing "particularized guarantees of trustworthiness." Id. at 66. The Court in *Crawford* established that a statement is testimonial if, among other things, it is made with "the involvement of government officers in the production of testimonial evidence," such as police interrogations. *Jenkins v. State*, 278 Ga. 598, 605-606 (2) (604 SE2d 789) (2004).

> Statements are nontestimonial when . . . the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when . . . the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis v. Washington*, 547 U. S. 813, 822 (126 SC 2266, 165 LE2d 224) (2006). In *Davis*, the court concluded that statements made during a 911 call were not testimonial, and thus admissible, because the purpose of the call "was to enable police assistance to meet an ongoing emergency." Id. at 828.

In this case, Dunn argues that the data in the report constituted testimonial evidence that was inadmissible because he had no opportunity to question the technician who tested the sample. Literally dozens of courts across the country have grappled with this issue in various factual postures, coming to different conclusions. Some courts have found that lab reports are business or "public" records and are therefore admissible with no confrontation issues. See, e.g., *Massachusetts v. Verde*, 444 Mass. 279, 284 (827 NE2d 701) (2005). Other courts have found that reports containing the technician's conclusions violate the Confrontation Clause and are inadmissible. See, e.g., *Kansas v. Laturner*, 163 P3d 367, 374-375 (Kan. Ct. App. 2007); *Thomas v. United States*, 914 A2d 1, 12-18 (D.C. 2006); *Martin v. State*, 936 S2d 1190, 1192-1193 (Fla. Dist. Ct. App. 2006). Still other courts have held that a technician's report constitutes "a contemporaneous recordation of observable events rather than the documentation of past events," and is not a testimonial statement excluded by *Crawford*. *California v. Geier*, supra, 41 Cal. 4th at 605; *Ohio v. Crager*, 116 Ohio St. 3d 369 (879 NE2d 745, 756) (2007).

In this case, the technician's conclusions were not submitted to

the jury, and the State concedes that admission of the report itself containing the lab technician's conclusions would have violated the defendant's Confrontation Clause rights. The expert's testimony was proper, however, because the supervisor came to her own independent conclusion that the substance was methamphetamine based on the chemical "fingerprint" from the GCMS test.

We have long held that an expert need not "testify to the validity of every step that went into the formulation of his results as a foundation for their admissibility." *Robinson v. State*, 231 Ga. App. 368, 370 (3) (498 SE2d 579) (1998), quoting *Orr v. Indiana*, 472 NE2d 627, 633-634 (2) (Ind. App. 1984). Also, an expert may base his opinion on data collected by others. *Harkness v. State*, 225 Ga. App. 864, 869 (7) (485 SE2d 810) (1997); *Caldwell v. State*, 230 Ga. App. 46 (495 SE2d 308) (1997). In *Byrd v. State*, 261 Ga. App. 483 (583 SE2d 170) (2003), we held that the trial court did not err in allowing a GBI chemist's supervisor to testify that a tested substance was cocaine, based on his review of the lab technician's file and the output generated by two different tests. The supervisor compared the results to published data to determine whether the substance tested was cocaine. We held that an expert's lack of personal knowledge "does not mandate the exclusion of the opinion but, rather, presents a jury question as to the weight which should be assigned the opinion." Id. at 484.

> A physician may order a blood test for a patient and infer from the levels of sugar and insulin that the patient has diabetes. The physician's diagnosis is testimonial, but the lab's raw results are not, because data are not "statements" in any useful sense. Nor is a machine a "witness against" anyone. If the readings are "statements" by a "witness against" the defendants, then the machine must be the declarant. Yet how could one cross-examine a gas chromatograph? . . . The vital questions — was the lab work done properly? what do the readings mean? — can be put to the expert on the stand. The background data need not be presented to the jury.

*United States v. Moon*, 512 F3d 359, 362 (7th Cir. 2008).

Dunn argues that he had no opportunity to cross-examine the technician who prepared the substance that was tested, thus violating his right to confrontation. But this is an issue affecting the reliability and weight of the evidence, not its admissibility.

> In the situation in which an expert personally observes data collected by another, the expert's opinion is not objection-

able merely because it is based, in part, on the other's findings. Even when an expert's testimony is based on hearsay, the expert's lack of personal knowledge does not mandate the exclusion of the opinion but merely presents a jury question as to the weight which should be accorded the opinion.

(Citation omitted.) *Velazquez v. State*, 282 Ga. 871, 875 (3) (655 SE2d 806) (2008); *Rogers v. State*, 282 Ga. 659, 665 (7) (b) (653 SE2d 31) (2007); *Roebuck v. State*, 277 Ga. 200, 202 (1) (586 SE2d 651) (2003).

When information provided by machines is mainly a product of "mechanical measurement or manipulation of data by well-accepted scientific or mathematical techniques," reliability concerns are addressed by requiring the proponent to show that the machine and its functions are reliable, that it was correctly adjusted or calibrated, and that the data . . . put into the machine was accurate (i.e., that the [substance] put into the machine was [from] the defendant's [vehicle]). In other words, a foundation must be established for the information through authentication. . . .

*United States v. Washington*, 498 F3d 225, 231 (4th Cir. 2007). In this case, the expert testified regarding the procedures used to establish that the substance tested was the substance that the arresting officer removed from Dunn's vehicle. The expert also testified that, before every test run on the GCMS machine, the technician ensures that the machine was properly calibrated by injecting into it both a known mixture of substances and "a negative control to make sure it wasn't falsely identifying something as well." In this case, the witness determined that the machine was properly calibrated before analyzing the data contained in the technician's report.

Because "the critical inquiry is not whether it might be reasonably anticipated that a statement will be used at trial but the circumstances under which the statement was made," *California v. Geier*, supra, 41 Cal. 4th at 607, the trial court did not err in allowing the expert witness to testify based on the data contained in the technician's report.

2. Dunn also contends that the trial court erred in allowing the supervisor to give expert opinion testimony based on reports prepared by others that were not admitted into evidence. As discussed in Division 1, "an expert may base his opinion on hearsay; the presence of the hearsay does not mandate the exclusion of the testimony, but rather goes to the weight the testimony is to be given, which is a question for the jury." *Brewer v. State*, 280 Ga. 18, 20 (2) (622 SE2d 348) (2005).

*Judgment affirmed. Johnson, P. J., concurs and Phipps, J., concurs fully and specially.*

PHIPPS, Judge, concurring fully and specially.

I agree with the thoughtful and well reasoned opinion of the majority. I agree that application of the various evidence rules cited in the majority opinion means that a defendant charged with possession of a controlled substance does not necessarily have a right to confront and cross-examine the expert who actually analyzed the substance on behalf of the state. I write separately only to note that the defendant does, however, have a qualified right to have an expert of his own choosing perform an independent analysis. *Carter v. State*, 252 Ga. 502, 504 (2) (315 SE2d 646) (1984), citing *Patterson v. State*, 238 Ga. 204 (232 SE2d 233) (1977).

DECIDED JULY 10, 2008 —

*Cook & Connelly, Bobby Lee Cook*, for appellant.

*Herbert E. Franklin, Jr., District Attorney, Alan C. Norton, Assistant District Attorney*, for appellee.