A09A1989. HAYWOOD v. THE STATE.

(689 SE2d 82)

BERNES, Judge.

The jury found Darris Haywood a/k/a Darrius Haywood guilty of possession of marijuana with intent to distribute and possession of cocaine with intent to distribute. On appeal, Haywood contends that there was insufficient evidence to convict him. He further contends that the trial court erred by excluding testimony concerning the circumstances surrounding his co-defendant's arrest, and by admitting expert testimony relating to the cocaine charge that was based upon hearsay and violative of his constitutional right to confrontation. Discerning no error, we affirm.

1. Following a criminal conviction, the defendant is no longer presumed innocent, and the evidence is viewed in the light most favorable to the jury's verdict. See *Wallace v. State*, 294 Ga. App. 159 (1) (669 SE2d 400) (2008). "We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt." (Citation and punctuation omitted.) *Neugent v. State*, 294 Ga. App. 284, 285 (1) (668 SE2d 888) (2008). See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

So viewed, the evidence adduced at trial showed that officers with the Southwest Georgia Drug Task Force executed a search warrant for drugs on a hotel room that was registered under the name of co-defendant Elgin Clayton. The officers found marijuana in the hotel room. Although Clayton was not in the room at the time of the search, his girlfriend was there, and the officers convinced her to call Clayton and ask him to return to the room.

Following the phone call, the officers observed a vehicle pull into the hotel parking lot. Clayton was driving and defendant Haywood was riding in the front passenger seat. Clayton exited the vehicle and approached the hotel room, but fled on foot when he saw the police officers. Two officers pursued him, but Clayton escaped apprehension.

Approximately one minute after Clayton fled on foot, an officer

approached the vehicle from which Clayton had exited. The engine was still running, and Haywood remained seated in the front passenger seat. The officer saw that Haywood had a bag on his lap; he ordered Haywood out of the vehicle and seized the bag, which contained contraband that later tested positive as marijuana and cocaine. The bag was placed in the custody of an investigator with the drug task force, who maintained control over the bag until the contents were tested. After he was ordered from the vehicle, Haywood spontaneously asserted that the drugs were Clayton's but admitted to an officer that he had been holding the drugs for Clayton while the latter went to the hotel room.

Clayton was taken into custody almost two weeks later. Subsequently, Clayton and Haywood were jointly indicted and tried for possession of marijuana with intent to distribute, OCGA § 16-13-30 (j) (1), and possession of cocaine with intent to distribute, OCGA § 16-13-30 (b).[1] At trial, the officer who had ordered Haywood out of the vehicle and had seized the bag of contraband, as well as the investigator who took custody of the bag, testified to the events as set out above. Additionally, the officer was tendered, without objection, as an expert in marijuana identification, and he testified that he had tested the substance found in the bag and that in his expert opinion it was marijuana weighing 15.59 grams. He further opined that based on his training and experience, the amount and packaging of the marijuana was consistent with distribution rather than individual use. With respect to the cocaine, the investigator similarly opined that the cocaine found in the bag had a street value that was consistent with drug distribution. The state also called a forensic chemist from the state crime lab who was tendered, without objection, as an expert in forensic chemistry. The chemist testified that in her expert opinion, the other substance in the bag was cocaine weighing 17.84 grams.

Clayton did not testify at trial. In contrast, Haywood took the stand and testified that the drugs in the bag belonged to Clayton and that his only intention was to "smoke a blunt" with his friend. Haywood admitted, however, that he had known that Clayton was going to sell drugs to somebody in the hotel room.

After hearing all the testimony, the jury convicted Clayton and Haywood of the charged offenses. On appeal, Haywood maintains that there was insufficient evidence that he intended to distribute the drugs found in the bag on his lap. In this respect, he argues that the state was required to present expert testimony showing that the

---

[1] Clayton also was indicted, tried, and convicted of driving with a suspended license and obstruction of a law enforcement officer.

amount of the seized drugs reflected an intent to distribute rather than mere personal use. Haywood also argues that even if Clayton intended to distribute the drugs, he did not share in that intent because his only intent was to use some of the drugs himself. We disagree.

In order to prove a defendant guilty of possession with intent to distribute beyond a reasonable doubt, the state must prove more than mere possession. *Hicks v. State*, 293 Ga. App. 830, 831-832 (668 SE2d 474) (2008). But contrary to Haywood's contention, the state is not required to present expert testimony on the issue of intent to distribute.

> We have considered *various kinds* of additional evidence as proof of intent to distribute, including drug measuring and weighing paraphernalia, the packaging of the contraband, possession of certain amounts or denominations of currency, a prior possession with intent to distribute conviction, and expert testimony that the amount of contraband possessed was consistent with larger amounts usually held for sale rather than for personal use.

(Citation and punctuation omitted; emphasis supplied.) Id. at 832. Moreover, even if not formally admitted as an expert, a police officer may give his opinion as to whether the amount or value of the contraband is consistent with distribution, if the state lays a foundation for the opinion by eliciting testimony about the officer's experience and training in drug enforcement. See *Daniels v. State*, 278 Ga. App. 263, 267 (2) (628 SE2d 684) (2006); *Tate v. State*, 230 Ga. App. 186, 188-189 (3) (495 SE2d 658) (1998). In any event, if the defendant does not timely object at trial to the state's alleged failure to lay an adequate foundation for the officer's opinion testimony, such an objection is waived on appeal. See *Driscoll v. State*, 295 Ga. App. 5, 7 (1) (a), n. 1 (670 SE2d 824) (2008); *Clark v. State*, 248 Ga. App. 88, 91 (3) (545 SE2d 637) (2001).

Here, the officer seized 15.59 grams of marijuana and 17.84 grams of cocaine from the bag in Haywood's lap. Without objection by Haywood, the officer opined that the amount and packaging of the marijuana was consistent with distribution rather than individual use, and the investigator similarly opined that cocaine found in the bag had a street value consistent with drug distribution. Haywood also admitted on the stand that the purpose of Clayton going to the hotel was to sell drugs. This evidence showed that the drugs were not merely for personal use.

Furthermore, although Haywood did not himself approach the hotel room to carry out the sale, there was evidence that he shared

in Clayton's intent to distribute the drugs. A defendant who does not directly commit the crime nevertheless may be convicted as a party to the crime if he intentionally aids or abets in its commission. See OCGA § 16-2-20 (b) (3); *Green v. State*, 298 Ga. App. 17, 20 (1) (679 SE2d 348) (2009). "Whether a person is a party to a crime may be inferred from that person's presence, companionship, and conduct before, during and after the crime." (Footnote omitted.) *Marshall v. State*, 275 Ga. 740, 742 (4) (571 SE2d 761) (2002).

There was evidence that Haywood had actual possession of the drugs, accompanied Clayton to the hotel, knew that Clayton was going to the hotel room to sell drugs to someone there, and had agreed to hold the bag of drugs while Clayton went to the room with the engine of the car still running.[2] In light of this evidence, the jury could have found that Haywood actively participated in the attempted drug dealing activity by guarding the drug stash and by staying with the still running vehicle to facilitate a quick getaway if necessary.

While Haywood denied that it was his intent to distribute the drugs, "[i]t is the jury's prerogative to choose what evidence to believe and what to reject. Issues regarding the credibility of witnesses are in the sole province of the jury and only the jury may analyze what weight will be given each witness's testimony." (Punctuation and footnote omitted.) *Lamb v. State*, 293 Ga. App. 65, 67 (666 SE2d 462) (2008). Based upon the evidence presented at trial, a rational trier of fact was authorized to find Haywood guilty beyond a reasonable doubt of being a party to the crimes of possession of marijuana and cocaine with intent to distribute. See *Jackson*, 443 U. S. 307. See also OCGA § 16-2-20 (b) (3); *Armstrong v. State*, 298 Ga. App. 855, 859 (1) (681 SE2d 662) (2009) (defendant convicted as a party to the crime of possession with intent to distribute). See generally *In the Interest of C. L.*, 289 Ga. App. 377, 380 (1) (b) (657 SE2d 301) (2008) (defendant's participation in crime could be inferred based in part upon continued involvement with co-defendants despite prior knowledge that crime would occur); *Baggs v. State*, 265 Ga. App. 282, 283, 283-284 (1) (593 SE2d 734) (2004) (defendant's participation in drug sale inferred based upon fact that he accompanied seller to the scene and sat in car with large amount of drugs stashed directly underneath his seat while seller approached undercover buyer to finalize sale).

---

[2] On cross-examination, the state introduced a certified copy of Haywood's prior convictions for the sale of cocaine, the sale of marijuana, and possession of cocaine with intent to distribute. The state did not give Haywood notice of its intent to use similar transaction evidence. Hence, the trial court admitted the convictions solely for impeachment purposes rather than as substantive evidence of intent or bent of mind, and the jury was so instructed.

2. Haywood contends that the trial court erred by excluding a police officer's testimony concerning the circumstances surrounding Clayton's arrest. According to Haywood's proffer before trial, the officer would have testified that Clayton had cocaine in the car with him at the time of his arrest. Haywood contends that the trial court should have allowed this testimony because it would have supported his claim that Clayton alone was the drug dealer and that the drugs seized in this case belonged exclusively to Clayton. Again, we disagree.

"Evidence of the circumstances surrounding an arrest is subject to the same standards of relevancy and materiality that govern the admission of all other evidence, and the decision whether to admit evidence connected to an arrest lies within the discretion of the trial court." (Footnote omitted.) *Dukes v. State*, 273 Ga. 890, 893 (4) (548 SE2d 328) (2001). See *Benford v. State*, 272 Ga. 348, 350 (3) (528 SE2d 795) (2000). We discern no abuse of discretion under the circumstances here.

At trial, the state proceeded under the theory that Clayton and Haywood jointly possessed the seized marijuana and cocaine. The fact that Clayton solely possessed drugs when he was arrested two weeks later "did not shine any light whatsoever" on whether Clayton was in exclusive possession of the drugs seized in this case. *Nichols v. State*, 282 Ga. 401, 403 (2) (651 SE2d 15) (2007). In other words, testimony that Clayton was found with drugs at an entirely different time and place two weeks after the charged crimes had no "logical relation" to whether Haywood jointly possessed the seized marijuana and cocaine or actively participated in the attempted drug deal at the hotel. Id. at 404 (3). Accordingly, the trial court acted within its discretion in concluding that the testimony concerning the arrest was not relevant for the proffered purpose and thus in excluding the testimony. See generally id. at 403-405 (2); *Crosby v. State*, 269 Ga. 434, 435 (3) (498 SE2d 62) (1998).

3. Haywood argues that the trial court erred by admitting the forensic chemist's expert testimony identifying the seized substance as cocaine because it was based upon inadmissible hearsay and violated his constitutional right to confront the witnesses against him. We are unpersuaded.

At trial, the forensic chemist with the state crime lab was tendered, without objection, to testify as an expert in forensic chemistry. She testified that she had retrieved the suspected cocaine from the sealed plastic evidence bag submitted by the investigator, weighed the substance, removed a small amount from the bag, and prepared two samples for testing. According to the forensic chemist, two tests were performed on the samples: a preliminary thin layer chromatography ("TLC") test and a gas chromatography-mass spec-

trometry ("GCMS") test. She testified that based on the TLC and GCMS test results, it was her expert opinion that the substance was cocaine.

On cross-examination, the forensic chemist testified that although she had prepared the samples for the tests, a lab technician conducted the TLC test and "sequenced" the machine for the GCMS test. While she did not directly supervise the lab technician's actions, the chemist testified that she had reviewed the testing done by the technician "to ensure that everything was working properly," and "[e]verything checked out."

Haywood contends that the forensic chemist's testimony identifying the cocaine was improper because it was predicated on data gathered by the lab technician and thus constituted inadmissible hearsay. But the forensic chemist reviewed the work performed by the lab technician for accuracy and exercised her own expert judgment as to whether the substance at issue was cocaine. Thus, the chemist was not acting as a "mere conduit" for the lab technician's findings. *Watkins v. State*, 285 Ga. 355, 358 (2) (676 SE2d 196) (2009). See *Rector v. State*, 285 Ga. 714, 715 (4) (681 SE2d 157) (2009). Furthermore, "[w]e have long held that an expert need not testify to the validity of every step that went into the formulation of his results as a foundation for their admissibility" and "may base his opinion on data collected by others." (Citations and punctuation omitted.) *Dunn v. State*, 292 Ga. App. 667, 671 (1) (665 SE2d 377) (2008). See *Watkins*, 285 Ga. at 358 (2); *Byrd v. State*, 261 Ga. App. 483, 484 (583 SE2d 170) (2003). "[A]n expert's lack of personal knowledge does not mandate the exclusion of the opinion but, rather, presents a jury question as to the weight which should be assigned the opinion." (Citation and punctuation omitted.) *Dunn*, 292 Ga. App. at 671 (1). See *Velazquez v. State*, 282 Ga. 871, 875 (3) (655 SE2d 806) (2008); *Byrd*, 261 Ga. App. at 484.

Haywood further contends that the state's failure to call the lab technician to testify violated his Sixth Amendment right to confrontation under *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004). He procedurally waived his contention, however, by failing to object on this ground at trial. See *Melendez-Diaz v. Massachusetts*, ___ U. S. ___, *15 (III) (A), n. 3 (129 SC 2527, 174 LE2d 314) (2009); *Purvis v. State*, 273 Ga. 898, 899 (3) (548 SE2d 326) (2001); *Yates v. State*, 298 Ga. App. 727, 729 (2) (681 SE2d 190) (2009). In any event, Haywood's contention is controlled directly and adversely to him by several recent cases, including *Rector*, 285 Ga. at 715 (4); *Bradberry v. State*, 297 Ga. App. 679, 682 (2) (678 SE2d 131)

YALE LAW LIBRARY

(2009); and *Dunn*, 292 Ga. App. at 669-672 (1).[3] Indeed, in *Reddick v. State*, 298 Ga. App. 155, 157 (2) (679 SE2d 380) (2009), the same forensic chemist gave similar expert testimony predicated on data gathered by the same lab technician involved in this case, and we likewise rejected the defendant's contention that his right to confrontation was violated. As such, the drug identification testimony in the instant case did not run afoul of the Sixth Amendment.

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

### DECIDED DECEMBER 16, 2009.

*Richard Parker*, for appellant.

*Joseph K. Mulholland, District Attorney, Charles E. Rooks, Assistant District Attorney*, for appellee.

---

[3] The present case is distinguishable from cases where the state relied upon the affidavits of state laboratory analysts to identify the substance in question and did not call the analysts at trial. See *Melendez-Diaz*, ___ U. S. at ___, *14-16 (III) (A); *Miller v. State*, 266 Ga. 850, 856-857 (7) (472 SE2d 74) (1996). See also *Rector*, 285 Ga. at 716 (4) (distinguishing *Melendez-Diaz* and *Miller*).