300 Ga. 659
FINAL COPY

S16A1489, S17A0503.  NAJI v. THE STATE (two cases).

BOGGS, Justice.

Appellants, brothers David and Michael Naji, were convicted of murder in connection with the shooting death of Demetrius Hill.[1] The trial court denied their amended motions for new trial, and they now appeal. Both brothers assert that the trial court erred in permitting the testimony of a medical examiner. Michael Naji also challenges the sufficiency of the evidence, and David Naji

---

[1] The crime occurred on December 25, 2008. On April 24, 2009, a Fulton County grand jury indicted the brothers on charges of malice murder, two counts of felony murder predicated on aggravated assault and possession of a firearm by a convicted felon, two counts of aggravated assault, two counts of possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. They were tried together before a jury November 3-8, 2010. The trial court granted a directed verdict as to the aggravated assault on a witness and the related possession of a firearm during the commission of a felony; the jury found both brothers guilty on all remaining counts. Both brothers were sentenced to life in prison for murder plus five years for possession of a firearm during the commission of a felony; the remaining convictions were either merged or  vacated by operation of law. See Malcolm v. State, 263 Ga. 369, 372-373 (5) (434 SE2d 479) (1993). However, as discussed in Division 6, Counts 8 and 9, possession of a firearm by a convicted felon, did not merge and are remanded for sentencing. The brothers' amended motions for new trial were denied in a single order on October 23, 2014. David Naji's notice of appeal was filed on November 14, 2014, and the case was docketed in this Court for the September 2016 term. Michael Naji's notice of appeal was filed on November 7, 2014,  a second notice of appeal was filed on November 14, 2014,  and the case was docketed in this Court for the term beginning in December 2016. Both cases were submitted for decision on the briefs.

asserts ineffective assistance of trial counsel. For the reasons that follow, we affirm.

Viewed in the light most favorable to the jury's verdicts, the evidence presented at trial showed that appellants and the victim left a Christmas Eve party intending to commit a robbery so they could get "some quick Christmas money." The victim's brother attempted to accompany them, but Michael Naji told him, "Nah, you ain't going; can't no snitch go with me; you a snitch," and David Naji told him not to come while waving a .32 revolver for emphasis.[2] The victim's sister's boyfriend also testified that David Naji had a .32 that night, and David Naji's girlfriend testified that he told her that his brother gave him a .32.

The brothers and the victim took the victim's sister's car. Michael Naji got into the driver's seat, even though the victim had the keys and his sister had instructed him, "[D]on't give my keys to nobody." Both brothers hurried or pressured the victim to get in the car when he seemed to hesitate. When they left, the victim was sitting in the right front seat, Michael Naji was driving, and David Naji was in the rear seat "right behind" the victim. The victim's brother

---

[2] The trial court granted a directed verdict with respect to the charge of aggravated assault arising out of the brandishing of the revolver because the victim's brother testified that it was never pointed at him.

immediately felt "something wrong"; he repeatedly attempted to contact the victim via cell phone, but there was no answer except for one call, when he heard nothing but someone "breathing heavily."

At some point after the three men left the party, the victim was shot in the back of the head with a .32 caliber bullet; the bullet's appearance was consistent with having been fired from a revolver. His body was dumped on the side of a dead-end road in southwest Atlanta, where it was discovered on Christmas Day. Investigators later located the victim's sister's car abandoned in a city park in southwest Atlanta. They also discovered blood under the headrest of the right front seat. A forensic biologist testified that a shirt worn by David Naji that night was stained with the blood of the victim.

When the victim's sister asked Michael Naji if he had seen the victim, he at first told her that he had not, but in a second conversation told her that the victim met a man with gold teeth and dreadlocks after dropping the brothers off near a local mall. He later told the sister's boyfriend that the victim had dropped them off at home "late," and that the car was in one of several intown neighborhoods. David Naji's girlfriend testified that he came to her house at about 9:00 p.m. on Christmas Eve, "shaking and scared," and instructed her not

to answer Michael Naji's telephone calls. David also instructed her to tell Michael Naji that he was "over to the train station" and told her not to speak to Michael or to his mother when they came to the door.

The brothers were later interviewed by the police; David Naji told police that the victim dropped him and his brother off at their mother's house on Christmas Eve between 8:00 and 8:15 or "8:30 at most." David denied that he was sitting behind the victim and denied having a gun. Michael Naji told police that he did not know what the victim did after dropping them off. Cellular telephone records for the phone in the victim's possession established that the phone was used in several locations in Atlanta at specific times between 8:00 p.m. and 9:30 p.m., including near the brothers' mother's home and the location where the body was recovered. A police officer drove the route that the brothers asserted was taken and testified that it took over 24 minutes to drive from the location of the Christmas party, where the victim's phone was recorded at 8:01 p.m., to the brothers' mother's home, and then to the 620 Peachtree Street location where the phone was recorded at 8:16 p.m. From this, the State argued that there was no time for the brothers to be dropped off at their mother's home by the victim, as they claimed to police.

4

The State called Dr. Michael Heninger, an associate medical examiner with the Fulton County Medical Examiner's office, to testify regarding the autopsy of the victim's body. Dr. Heninger did not conduct the autopsy, but he reviewed the report and associated documentation prepared by another medical examiner, Dr. Geoffrey Smith, who was unavailable at the time of trial. Dr. Heninger testified generally about the Fulton County Medical Examiner's standard practices and gave his opinion from his review of the file that the cause of death was homicide due to a gunshot wound to the back of the victim's head.

1. Michael Naji raises the issue of sufficiency of the evidence, while David Naji does not. Nevertheless, we have independently reviewed the record with an eye toward the legal sufficiency of the evidence with respect to both brothers. Michael Naji argues that he was a mere bystander. But "[w]hile mere presence at the scene of a crime is not sufficient evidence to convict one of being a party to a crime, criminal intent may be inferred from presence, companionship, and conduct before, during and after the offense." (Citation omitted.) Belsar v. State, 276 Ga. 261, 262 (1) (577 SE2d 569) (2003). See also OCGA § 16-2-20 (party to a crime); OCGA § 24-14-6 ("To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the

5

hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."). We conclude that the evidence adduced at trial was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that David Naji and Michael Naji committed the crimes as to which they were found guilty. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Both David and Michael Naji contend that the trial court erred in admitting the testimony of Dr. Heninger, contending that it violated their right of confrontation. We disagree. The matter was fully explored outside the presence of the jury, after objections by both brothers' trial counsel. The trial court noted that the State had informed him that Dr. Smith, the medical examiner who performed the autopsy, was unavailable. Upon inquiry, the prosecutor stated that Dr. Smith had been placed under subpoena by the State but had left the country on vacation before the prosecutor could inform him that the case had been called for trial. In the voir dire examination of Dr. Heninger, he testified that he had appeared before in the place of another, unavailable, medical examiner, and that whenever he did so, he reviewed the written report, the photographs of the autopsy, charts, toxicology reports, and other documents

6

associated with the case. He testified that those reports and photographs were kept in the normal course of business of the Medical Examiner's office, that he had access to them, and that he was able to form his own opinion based upon the reports, photographs, and other documents. The trial court further questioned Dr. Heninger and elicited the testimony that in his profession, it is common and accepted practice to rely upon work that is done by others to formulate an opinion. The court also inquired whether either defense counsel had placed Dr. Smith under subpoena; they had not.

The trial court ruled that Dr. Heninger was qualified as an expert, and that because it was common practice in his profession to testify based upon reviewing the work of others, he was qualified to give his opinion as an expert even though he did not perform the autopsy. The trial court added, however, that since Dr. Heninger had just been identified, defense counsel were entitled to an opportunity to interview him and then were entitled to a continuance if they wished to do so, adding that they had already preserved their earlier objections. After consulting with their clients, counsel elected to proceed.

Former OCGA § 24-9-67, effective at the time of the brothers' trial, provided: "In criminal cases, the opinions of experts on any question of science,

7

skill, trade, or like questions shall always be admissible; and such opinions may be given on the facts as proved by other witnesses."[3] Moreover, under the former law an expert was permitted to give opinion evidence on the basis of data collected by another:

> Generally, an expert cannot voice an opinion based upon facts not within the expert's personal knowledge or based upon observations or reports not admitted into evidence; however, an expert may give an opinion based upon facts personally observed by the expert and upon data collected by another and personally observed or reviewed by the expert. In the case at bar, the expert based his opinion on the facts contained in the autopsy report, including factual data collected by the medical examiner who had performed the 1979 autopsy. The expert opinion admitted at trial was not the restatement of the diagnostic opinion of another expert.

(Citations omitted.) Turner v. State, 273 Ga. 340, 344 (4) (541 SE2d 641) (2001). And "[e]ven when an expert's testimony is based on hearsay, the expert's lack of personal knowledge does not mandate the exclusion of the opinion but merely presents a jury question as to the weight which should be accorded the opinion. [Cit.]" Velazquez v. State, 282 Ga. 871, 875 (3) (655 SE2d 806) (2008).

The decision of Bullcoming v. New Mexico, 564 U. S. 647 (131 SCt

---

[3] This provision was carried forward in the new Evidence Code as OCGA § 24-7-707. In addition, OCGA § 24-7-703 enumerates bases of expert opinion testimony.

8

2705, 180 LE2d 610) (2011), is inapplicable to Dr. Heninger's testimony. In Bullcoming, a DUI prosecution, the Supreme Court held that the State could not admit into evidence a certified forensic lab report of a blood-alcohol analysis in the absence of the analyst who performed the test and certified the report. Id. at 647-648. The report was testimonial, created solely for the purpose of prosecution, and the analyst's certification that the test was performed properly could not be testified to by the substitute witness. Id. at 663-664 (III). Moreover, the substitute witness offered no independent opinion based upon his own observations. Id. at 662 (II) (B).

Here, in contrast, the State did not seek to admit the autopsy report itself, but rather asked Dr. Heninger his independent, expert opinion regarding the facts contained in that report and associated documents. The trial court correctly applied Bullcoming when it refused to admit the autopsy photographs into evidence because the witness could not authenticate them.

3. David Naji claims that his trial counsel was ineffective in failing to raise a continuing objection to the testimony of the medical examiner and in failing to move for a mistrial after that testimony.[4] But as we have noted above, the

_____

[4] Trial counsel for David Naji joined in the objection made by Michael Naji's counsel and made additional argument on the issue of the confrontation clause.

testimony of the medical examiner was admissible under our former Evidence Code, and "[trial] counsel's failure to make a meritless objection cannot constitute evidence of ineffective assistance. [Cits.]" Porter v. State, 292 Ga. 292, 294 (3) (a) (736 SE2d 409) (2013).

4. In the sentencing orders, the trial court recites that the brothers' convictions for Counts 8 and 9, possession of a firearm by a convicted felon, merged into the murder convictions. Because this crime requires proof of elements not included in malice murder —  possession of a firearm and convicted felon status —  these convictions did not merge with the murder convictions. See Jones v. State, 299 Ga. 377, 381 (2) (788 SE2d 477) (2016). The trial court should have sentenced the brothers for the convictions on the charges of possession of a firearm by a convicted felon. We therefore vacate that portion of David Naji's sentencing order in which the trial court "merged" Count 8 into Count 1, and that portion of Michael Naji's sentencing order in which the trial court "merged" Count 9 into Count 1, and remand these cases to the trial court for sentencing on Counts 8 and Count 9. Id.

Judgments affirmed in part and vacated in part, and cases remanded for sentencing.  All the Justices concur.

Decided March 6, 2017.

Murder. Fulton Superior Court. Before Judge Russell.

Michael W. Tarleton, for appellant (case no. S16A1489).

Steven A. Miller, for appellant (case no. S16A0503).

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Sheila E. Gallow, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Scott O. Teague, Assistant Attorney General, for appellee.