NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: August 12, 2025

S25A0875.  JOHNS v. THE STATE.

WARREN, Presiding Justice.

In December 2023, George Sharrod Johns was convicted of malice murder and other crimes in connection with the November 2022 stabbing death of Jason Cason, Jr.[1]  Johns appeals those convictions, contending that the evidence was insufficient as a matter of constitutional due process; that the trial court abused its discretion by admitting photographs taken before and during

---

[1] The stabbing occurred on November 10, 2022.  On February 7, 2023, a Fulton County grand jury indicted Johns for malice murder (Count 1), felony murder (Count 2), and aggravated assault (Count 3).  Johns was tried from December 12 to 13, 2023.  After the jury found Johns guilty of all counts, the trial court entered a final judgment sentencing Johns to life in prison for malice murder.  The remaining counts were merged or vacated by operation of law.  On December 15, 2023, Johns timely filed a motion for new trial, which he later amended on September 2, 2024.  On September 24, 2024, the trial court entered an order denying the motion.  Johns then filed a timely notice of appeal, which he subsequently amended, and the case was docketed to the April 2025 term of this Court and submitted for a decision on the briefs.

Cason's autopsy; and that the trial court violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution by allowing a medical examiner to provide testimony about Cason's autopsy when she was not the person who performed the autopsy. For the reasons explained below, each of these claims fail and we affirm Johns's convictions and sentence.

1. As relevant to his claims on appeal, the evidence presented at Johns's trial showed the following. Cason shared an apartment with Gary Mack, who testified about the events on the evening of November 10, 2022. Both Mack and Cason knew Johns and had lived in the same apartment complex with him for several years. Cason and Johns were "friends," and Johns came over to Cason and Mack's apartment to see Cason "every day." Mack described Cason as "a little man" compared to Johns, who was "more muscular."

On the afternoon of November 10, Mack came home to his apartment. After Mack greeted Cason, who was sitting in the living room, Mack went into his bedroom, turned on the television, and lay down on his bed. While he was watching television, Mack saw Cason

2

walk down the hallway to his own bedroom.  After a short time, Johns came into the apartment and went into Cason's room.  Mack testified that no one else was in Cason's room besides Cason and Johns.  At first, Mack heard the men "laughing and talking," but then Mack heard Cason say in a low voice, "[D]on't hit me no more."  Sitting up on his bed, Mack sensed "something [was] wrong."  Then, Mack saw Johns leave Cason's room, walk down the hall, and close the front door to the apartment.  Mack got off of his bed, walked out of his bedroom, and called Cason's name.  After several moments of silence, Mack looked into Cason's room and saw Cason "laying on the floor up against the wall" "in a pile of blood."

Mack called Cason's name again, but Cason was unresponsive.  Because Mack "[didn't] know [what was] going on," he went to front door of the apartment and locked the door.  Then, Mack noticed that "the door handle" "was moving" and that Johns was "trying to come back in" the apartment.  Unsuccessful, Johns walked off toward a nearby road and eventually disappeared from view.  When he could no longer see Johns, Mack called 911.

3

Around 6:00 p.m., Atlanta police arrived at the apartment complex. One of the police officers who responded testified that he found Cason in a bedroom in the back of his apartment. Cason "appeared to be deceased" and was "covered in blood." After securing the crime scene, the officer received information that Johns lived in a different apartment unit 200-300 yards away from Mack and Cason's unit and "had previously been inside [Cason's] apartment." At 6:59 p.m., the officer and a police captain walked to Johns's apartment and knocked on the door. Johns answered and allowed the officers to enter his apartment, where they conducted a sweep of the premises. When Mack later identified Johns as the person he saw leaving Cason's bedroom around the time of the killing, officers detained Johns and procured a search warrant. By the end of the night, Johns was arrested and taken into custody.

At trial, a crime-scene investigator who searched and processed Johns's apartment testified that she took samples from "reddish stains on the bathroom door" and "collected a towel with reddish stains" inside the apartment. A forensic serologist with the

4

Georgia Bureau of Investigation testified that her analysis of both samples "indicated that there was blood present." And a forensic biologist concluded that Cason's DNA matched the primary profile found on the swabs taken from Johns's bathroom door and the towel.

Dr. Karen Sullivan conducted a peer review of Cason's autopsy photographs and the draft report prepared by Dr. Sally Aiken, the primary forensic pathologist. Dr. Sullivan was qualified as an expert in forensic pathology at trial and testified that she concluded that Cason sustained 27 "sharp force injuries" on "the left side of [his] torso" that she deemed "sharp force wounds or stab wounds[.]" Cason's autopsy photographs showed "a number of . . . sharp force injuries . . . in the heart," the aorta, and the pulmonary trunk, any one of which could have been "independently fatal." The photographs also showed that Cason sustained "a sharp force injury on the left side of the neck," along with "defensive wounds" on his hands that suggested Cason had "tr[ied] to ward off the knife or object that [he was] being assaulted with." Dr. Sullivan opined that the cause of Cason's death was "stab wounds of the chest" which

5

caused "rapid death . . . within minutes." In her opinion, Cason's injuries were consistent with homicide.

2. Johns contends that the evidence was not sufficient as a matter of constitutional due process to support his convictions. See *Jackson v. Virginia*, 443 US 307, 318–19 (1979). When assessing this claim, "we view all of the evidence presented at trial in the light most favorable to the verdicts and consider whether any rational juror could have found the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted." *Moulder v. State*, 317 Ga. 43, 46–47 (2023). In making this determination, "[w]e leave to the jury the resolution of conflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be derived from the facts." *Perkins v. State*, 313 Ga. 885, 891 (2022) (citation and punctuation omitted). "As long as there is some competent evidence, even [if] contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." *Jones v. State*, 304 Ga. 594, 598 (2018) (citation and punctuation omitted).

The evidence presented at Johns's trial, viewed in the light most favorable to the verdicts, authorized the jury to find Johns guilty beyond a reasonable doubt of malice murder. A person commits malice murder if "he unlawfully and with malice aforethought, either express or implied, causes the death of another human being." OCGA § 16-5-1(a). Among other things, the evidence showed that Johns was the only other person in Cason's bedroom at the time of the murder. Mack, Cason's roommate, testified that, while Johns was in Cason's bedroom, he overheard Cason tell Johns, "[D]on't hit me no more." Mack further testified that he saw Johns leave Cason's bedroom and then the apartment alone; and, after he observed Cason "laying on the floor up against the wall" "in a pile of blood," he locked the apartment door and Johns attempted to reenter the apartment. Additionally, the jury heard testimony from the State's forensic biology expert, who testified that blood stains found on a white towel in Johns's apartment and on Johns's bathroom door contained traces of Cason's DNA. Finally, the State's forensic pathology expert testified that, based on her review of Cason's

7

autopsy examination, Cason sustained 27 "sharp force injuries" and "defensive wounds" on his hands that indicated Cason had "tr[ied] to ward off the knife or object that [he was] being assaulted with."

Presented with this evidence, a reasonable jury could find Johns guilty beyond a reasonable doubt of malice murder. See *Pounds v. State*, 320 Ga. 288, 292–93 (2024) (evidence presented was constitutionally sufficient to support defendant's conviction for malice murder when, among other things, the defendant was the only other person present at the time of the death); *Russell v. State*, 319 Ga. 556, 559–60 (2024) (evidence presented was constitutionally sufficient to support defendant's conviction for malice murder when the victim suffered approximately 28 sharp and blunt force injuries, including defensive wounds to the hands and arms); *Smith v. State*, 306 Ga. 556, 556–57 (2019) (evidence presented was constitutionally sufficient to support defendant's conviction for malice murder when witnesses testified that they had last seen the victim with the defendant and "[i]nvestigators later found [the victim's] DNA on [the defendant's] shorts"); *Collins v. State*, 290 Ga. 505, 505 (2012)

(evidence presented was constitutionally sufficient to support defendant's conviction for malice murder when a blood stain found on the defendant's clothing contained traces of the victim's DNA). See also *Martin v. State*, 306 Ga. 747, 747–48 (2019) (evidence presented was constitutionally sufficient to support defendant's conviction for felony murder when paramedics found the victim "lying on a bedroom floor with a stab wound to the chest" and the defendant and the victim "had been fighting" before the stabbing).[2]

3. Johns contends that the trial court abused its discretion by admitting into evidence five photographs taken before and during Cason's autopsy. Two of the five photographs Johns objected to were taken before Cason's autopsy and depicted Cason's appearance at the time the body bag was opened by forensic examiners. The other

---

[2] To the extent Johns also argues that the trial court failed to exercise its discretion as the thirteenth juror under OCGA §§ 5-5-20 and 5-5-21 as a separate enumeration of error, this claim also fails. The trial court expressly declined "to grant a new trial under the authority provided by OCGA §§ 5-5-20 and 5-5-21" after having concluded that "this is not an exceptional case in which the evidence preponderates heavily against the verdict." Because the record does not support Johns's argument that the trial court failed to exercise its discretion under OCGA §§ 5-5-20 and 5-5-21, Johns's general grounds claim—to the extent he makes one—fails. See *Drennon v. State*, 314 Ga. 854, 861 (2022).

three photographs were taken during Cason's autopsy and depicted, from different angles, the location, severity, and extent of Cason's injuries, including the injuries to his chest and defensive wounds to his hands. Johns moved to exclude these photographs under OCGA § 24-4-403, arguing that they were cumulative because the State had introduced similar photographs in connection with the testimony of the crime-scene investigator; that the photographs did not "add anything of value, as far as to the evidence"; and that the purpose of introducing the photographs was to inflame the passions of the jury. Over Johns's objection, the trial court ruled that the State could introduce only one of the two pre-autopsy photographs and admitted the other three photographs taken during Cason's autopsy.

On appeal, Johns contends that the trial court abused its discretion "when it allowed the State to introduce photos of the victim's body." In enumerating this error, he does not specify which of the four photographs he contends the trial court abused its discretion by admitting. But even assuming he complains of all four photographs, his claim fails.

10

In general, the admissibility of autopsy photographs is governed by OCGA §§ 24-4-401, 24-4-402, and 24-4-403. See *White v. State*, 319 Ga. 367, 375 (2024). Under OCGA § 24-4-401, an autopsy photograph is relevant evidence if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant autopsy photographs are generally admissible as evidence, see OCGA § 24-4-402, but such photographs "may be excluded if [their] probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." OCGA § 24-4-403. We review a trial court's evidentiary rulings for an abuse of discretion. *Baker v. State*, 318 Ga. 431, 446 (2024).

Johns does not dispute that the photographs taken before and during Cason's autopsy were relevant evidence under OCGA § 24-4-401. Instead, he contends that the trial court abused its discretion

11

in concluding that the probative value of the photographs was not substantially outweighed by the danger of unfair prejudice under OCGA § 24-4-403 ("Rule 403"). In particular, Johns complains that the probative value of the photographs was low because they were "cumulative" of other photographs that had been previously introduced by the State, and that the photographs unfairly "inflam[ed] the passions of the jurors against him."

We disagree. To begin, neither the pre-autopsy photograph nor the autopsy photographs were "needlessly cumulative," see *Salvesen v. State*, 317 Ga. 314, 317 (2023), of other photographs the State had already admitted. The previously admitted photographs—those introduced through the crime-scene investigator—depicted Cason's apartment building, his apartment unit and bedroom, the condition of his body after he was found dead, Johns's apartment unit, and Johns once he was in custody. Although some of those photographs also depicted Cason's injuries, they were not probative of the nature and extent of those injuries, including his defensive wounds—key evidentiary points in the State's case. The photographs taken before

12

and during Cason's autopsy, by contrast, assisted the State's forensic-pathology expert in "describing the nature and severity" of Cason's injuries and were "highly relevant to the issues of both how and when the injuries were sustained." *Johnson v. State*, 316 Ga. 672, 683 (2023). As to the prejudicial effect of these photographs, they were not "especially gory or gruesome in the context of autopsy photographs" and therefore were unlikely inflame the jury's passions in a murder case involving fatal stab wounds. *Pike v. State*, 302 Ga. 795, 799 (2018). Accordingly, we cannot say that the trial court abused its discretion when it concluded that the probative value of the photographs taken before and during Cason's autopsy was not substantially outweighed by the danger of unfair prejudice under Rule 403.

4. Finally, Johns asserts that his rights under the Confrontation Clause were violated when the trial court allowed Dr. Sullivan to provide testimony about Cason's autopsy when she was not the person who performed the autopsy. We review this claim of error de novo. See *State v. Gilmore*, 312 Ga. 289, 292 (2021).

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI. "The Clause bars the admission at trial of 'testimonial statements' of an absent witness unless she is 'unavailable to testify, and the defendant has had a prior opportunity' to cross-examine her." *Smith v. Arizona*, 602 US 779, 783 (2024) (quoting *Crawford v. Washington*, 541 US 36, 53–54 (2004)) (alterations adopted). Therefore, the State in a criminal prosecution "may not introduce the testimonial out-of-court statements of a forensic analyst at trial, unless she is unavailable and the defendant has had a prior chance to cross-examine her." See id. at 802-803 (citations omitted). As a result, the State cannot "introduce a forensic laboratory report containing a testimonial certification—made for the purpose of proving a particular fact—through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification." *Bullcoming v. New Mexico*, 564

14

U.S. 647, 652 (2011).

But these Sixth Amendment principles were not violated in Johns's trial. We have explained that a defendant's rights under the Confrontation Clause are not violated when "the State [does] not seek to admit [an] autopsy report itself, but rather ask[s] [a second expert] his independent, expert opinion regarding the facts contained in that report and associated documents." *Naji v. State*, 300 Ga. 659, 663 (2017). Dr. Sullivan was that second expert in Johns's case. At trial, Dr. Sullivan, a pathologist, testified that as a general practice, autopsies performed at the Fulton County Medical Examiner's Office are peer-reviewed, meaning that a second pathologist independently reviews the autopsy photographs and the primary pathologist's draft report and that the peer-reviewing pathologist forms his or her own expert opinion as to the victim's cause and manner of death. According to Dr. Sullivan, that is what happened here: Cason's autopsy was conducted by Dr. Aiken, the primary pathologist, and then Dr. Sullivan conducted a peer

15

review.[3]    Dr. Sullivan testified that she reviewed "the case information that the investigator had prepared initially, and then [she] viewed the photographs that had been taken during [Cason's] autopsy, and Dr. Aiken's draft report," and that her independent, expert opinion regarding Cason's cause and manner of death were based on these materials.

But the State never sought to admit the materials prepared by Dr. Aiken, the medical examiner who performed Cason's autopsy. Instead, Dr. Sullivan used the facts contained in Dr. Aiken's preliminary report, along with the autopsy photographs, to inform

---

[3] The State filed a pre-trial notice of its intent "to present the testimony of a substitute medical examiner" because Dr. Aiken, the primary forensic pathologist that performed Cason's autopsy, "resides and practices in the State of Washington" and the State "anticipates Dr. Aiken's unavailability at trial." The State represented that Dr. Sullivan, the forensic pathologist that "signed Dr. Aiken's autopsy report as a peer reviewer," would testify in lieu of Dr. Aiken "pursuant to" OCGA § 24-7-702, which says that "[t]he opinion of a witness qualified as an expert under this Code section may be given on the facts as proved by other witnesses," and OCGA § 24-7-703, which says that "[t]he facts or data in the particular proceeding upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing."  In his brief, Johns argues only that Dr. Sullivan's testimony violated his rights under the Confrontation Clause; he does not challenge the State's reliance on OCGA §§ 24-7-702 and 24-7-703 to introduce Dr. Sullivan's testimony.

her expert opinion regarding the cause of Cason's injuries and the cause of death. In other words, "[t]he expert opinion admitted at trial was not the restatement of the diagnostic opinion of another expert," *Naji*, 300 Ga. at 663, the Confrontation Clause was not violated, and Johns's claim therefore fails. See *Taylor v. State*, 303 Ga. 225, 230 (2018) (holding that the Confrontation Clause was not violated when the medical examiner testified as to his independent, expert opinion regarding the facts contained in an autopsy report he did not prepare, and the State did not seek to admit the report itself). See also *Moody v. State*, 316 Ga. 490, 544–46 (2023) (holding that the Confrontation Clause was not violated when a medical examiner testified as to his expert opinion regarding the results of testing and evaluations that were conducted by resident trainees, and the trainees' evaluation and testing results were not admitted into evidence).

*Judgment affirmed. All the Justices concur, except LaGrua, J., disqualified, and Land, J., not participating.*